[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 346 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 347 
James Matthew Hyde appeals the circuit court's summary denial of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he attacked his capital-murder convictions and his sentence of death.
In 1996, Hyde was convicted of three counts of capital murder in connection with the murder of Ernest Andrew Whitten. The murder was made capital (1) because it was committed during the course of a burglary, see § 13A-5-40(a)(4), Ala. Code 1975; (2) because Whitten was a grand-jury witness, see §13A-5-40(a)(14), Ala. Code 1975; and (3) because Whitten had been subpoenaed to testify at the trial of Larry Wayne Whitehead,[1]
see § 13A-5-40(a)(14), Ala. Code 1975. The jury recommended, by a vote of 7-5 that Hyde be sentenced to life imprisonment without the possibility of parole. The trial court over-rode the jury's verdict and sentenced Hyde to death. Hyde's convictions and sentence were affirmed on appeal, Hyde v.State, 778 So.2d 199 (Ala.Crim.App. 1998), aff'd,778 So.2d 237 (Ala. 2000), and the United States Supreme Court denied certiorari review, Hyde v. Alabama, 532 U.S. 907,121 S.Ct. 1233, 149 L.Ed.2d 142 (2001). This Court issued a certificate of judgment on September 20, 2000. The facts of the case are set forth in this Court's opinion in Hyde v.State, 778 So.2d 199 (Ala.Crim.App. 1998).
On January 11, 2002, Hyde, through counsel, submitted a Rule 32 petition to the circuit clerk's office accompanied by a request to proceed in forma pauperis; he submitted an amended petition on May 1, 2002. The circuit court summarily denied Hyde's petition and the amendment on February 1, 2004, and Hyde appealed. By order issued on May 7, 2004, this Court remanded this case for the circuit court to determine whether it had granted Hyde's request to proceed in forma pauperis before it ruled on Hyde's petition. On May 17, 2004, the circuit court granted Hyde's request to proceed in forma pauperis and a request to file another amended petition. Hyde filed a second amended petition on May 20, 2004. In an opinion issued on July 23, 2004, this Court dismissed Hyde's appeal on the ground that the circuit court did not have jurisdiction to rule on Hyde's Rule 32 petition without having first granted Hyde's request to proceed in forma pauperis; we also noted that the court's order on remand allowing Hyde to file an amended petition exceeded the scope of our remand order and, thus, was void for lack of jurisdiction. Hyde v. State, 894 So.2d 808
(Ala.Crim.App. 2004).
On September 22, 2004, the circuit court issued an order accepting Hyde's May 20, 2004, amendment to his petition and, after numerous additional filings by both Hyde and the State, summarily denied Hyde's amended petition on February 1, 2005. Hyde filed a notice of appeal on March 8, 2005. By order dated August 11, 2005, this Court remanded this case for the circuit court to vacate Hyde's death sentence and to resentence Hyde to life imprisonment without the possibility of parole because Hyde was 17 years old at the time of the crime. See Roperv. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 *Page 349 
(2005). The circuit court complied with our instructions and resentenced Hyde to life imprisonment without the possibility of parole.
"[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White,792 So.2d 1097, 1098 (Ala. 2001). "However, where there are disputed facts in a postconviction proceeding and the circuit court resolves those disputed facts, `[t]he standard of review on appeal . . . is whether the trial judge abused his discretion when he denied the petition.'" Boyd v.State, 913 So.2d 1113, 1122 (Ala.Crim.App. 2003), quoting Elliott v. State, 601 So.2d 1118, 1119
(Ala.Crim.App. 1992). "`[I]f the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition.'" Scroggins v.State, 827 So.2d 878, 880 (Ala.Crim.App. 2001), quotingReed v. State, 748 So.2d 231, 233 (Ala.Crim.App. 1999). Moreover, "[w]e will not review issues not listed and argued in brief." Brownlee v. State, 666 So.2d 91, 93
(Ala.Crim.App. 1995). Therefore, those claims that Hyde presented in his petition but does not pursue on appeal are deemed to be abandoned and will not be considered by this Court.
 I.
Before considering the arguments presented by Hyde on appeal, we must first determine whether Hyde's petition was timely filed within the two-year limitations period applicable to this case under former Rule 32.2(c).[2]
As noted above, Hyde submitted his petition and a request to proceed in forma pauperis on January 11, 2002, within the two-year limitations period. However, the circuit court did not grant. Hyde's request to proceed in forma pauperis until May 17, 2004, long after the limitations period had expired. In demons v. State, [Ms. CR-01-1355, June 24, 2005] ___ So.2d ___ (Ala.Crim.App. 2003) (opinion on return to remand), this Court held that a Rule 32 petition is deemed to be filed the date the circuit court grants the request to proceed in forma pauperis;[3] we stated:
 "The appellant argues that the circuit court erred in not granting his motion to correct an alleged clerical error related to the date his petition was deemed filed. The record shows that, on December 27, 1999, the appellant submitted a Rule 32 petition to the circuit clerk's office. However, he did not submit a filing fee or a request to proceed in forma pauperis with the petition. On January 28, 2000, the appellant submitted both a Rule 32 petition and a request to proceed in forma pauperis to the circuit clerk's office, and the circuit clerk docketed the Rule 32 petition as filed on that date.
 "Subsequently, the appellant requested that the case action summary sheet be corrected to show an original filing *Page 350 
date of December 27, 1999. After conducting a hearing on this matter, the circuit court made the following entry on the case action summary sheet: `Petitioner's Motion to Correct Clerical Error: Denied, as the Court finds the Defendant's Rule 32 petition was properly filed on January 28, 2000.' (C.R. 4.)
 "Rule 32.6(a), Ala.R.Crim.P., provides, in pertinent part:
 "`[A Rule 32 petition] shall also be accompanied by the filing fee prescribed by law or rule in civil cases in the circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauper-is. . . .
 "`Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition. . . .'
 "(Emphasis added [in demons].) Section 12-19-70, Ala. Code 1975, which governs civil filing fees, or docket fees, provides:
 "`(a) There shall be a consolidated civil filing fee, known as a docket fee, collected from a plaintiff at the time a complaint is filed in circuit court or in district court.
 "`(b) The docket fee may be waived initially and taxed as costs at the conclusion of the case if the court finds that payment of the fee will constitute a substantial hardship. A verified statement of substantial hardship, signed by the plaintiff and approved by the court, shall be filed with the clerk of court.'
"Section 12-19-70, Ala. Code 1975, applies to Rule 32 petitions[4]. See Ex parte McWilliams,812 So.2d 318, 320 (Ala. 2001) (noting that `[s]ection 12-19-70, Ala. Code 1975, requires that a circuit court collect the docket fee for a postconviction petition at the time the petition is filed, unless the circuit court approves a verified statement of substantial hardship, in which event the docket fee may be initially waived and then taxed as costs at the conclusion of the case'); Ex parte Carter, 807 So.2d 534, 536
(Ala. 2001) (noting that `the circuit court never had jurisdiction to consider Carter's Rule 32 petition, because it did not collect a filing fee or approve Carter's affidavit of substantial hardship at the time the petition was filed').
"In De-Gas, Inc. v. Midland Resources,470 So.2d 1218 (Ala. 1985), the Alabama Supreme Court addressed the effect of the failure to pay a filing fee at the time that a civil action was `filed' in the circuit court. In addressing the purpose and intent behind the adoption of § 12-19-70, Ala. Code 1975, the Alabama Supreme Court explained:
 "`The use of the term "shall" in this provision makes the payment of the filing fee mandatory. See Prince v. *Page 351 Hunter, 388 So.2d 546, 547 (Ala. 1980). It was the obvious intent of the legislature to require that either the payment of this fee or a court-approved verified statement of substantial hardship accompany the complaint at the time of filing. No doubt the purpose behind the passage of this provision was to discourage the filing of frivolous suits and to insure that the clerks of the circuit courts do not become "credit men." Cf. Turkett v. United States, 76 F.Supp. 769
(N.D.N.Y.1948) (holding that payment of the filing fee is a prerequisite to filing an action under Rule 3, Fed.R.Civ.P., which is identical to our Rule 3, and 28 U.S.C.A., § 549 (now 28 U.S.C.A., § 1914), which provides that the party instituting a civil action must pay a filing fee, and commenting, "Any other construction would open the door to actions without merit by irresponsible parties, and make the clerk a credit man, whose accountability might result in his personal loss," 76 F.Supp. at 770).
 "`This Court has recognized that "a mere filing of a complaint is not commencement in all cases." Ward v. Saben Appliance Co., 391 So.2d 1030, 1032 (Ala. 1980). While "[t]he filing of a complaint is . . . a significant factor in commencing actions and suspending the operation of applicable statutes of limitations; . . . it is not the sole factor." (Emphasis added.) Id.
We must decide whether, in light of the above-noted legislative change in the fee payment procedure, the pre-payment of the filing fee is now a factor to be considered in determining whether a suit has been commenced, thereby avoiding the running of the statute of limitations. We hold that it is.
 "`. . . .
 "`By failing to pay at the time of filing the complaint the filing fee mandated by § 12-19-70, the plaintiffs not only caused service to be withheld but effectively precluded any action by the clerk's office necessary to actually set the case in motion. We can only conclude that plaintiffs did not have a bona fide intent, at the time of filing, to proceed with this action. Consequently, this action was not "commenced" at the time of filing and the statute of limitations continued to run so as to bar the action.'
"470 So.2d at 1220-22. The same is true for Rule 32 petitions. According to Rule 32.6(a), Ala.R.Crim.P., the circuit clerk shall file a Rule 32 petition only after a filing fee is paid or a request to proceed in forma pauperis
is granted.
"In this case, the petition that counsel attempted to file on December 27, 1999, was not accompanied by a filing fee or a request to proceed in forma pauperis. Therefore, the petition was not properly filed at that time, as contemplated by Rule 32.6(a), Ala.R.Crim.P. Thereafter, on January 28, 2000, a Rule 32 petition and a request to proceed in formapauperis were presented to the circuit clerk, and that was the date the circuit clerk used as the filing date for the Rule 32 petition. The circuit court did not grant the request to proceed in forma pauperis until February 2, 2000. Therefore, the circuit court should have used February 2, 2000, as the filing date. However, as the appellant concedes, any error regarding the filing date is not important in this case because the appellant timely filed his petition. Under these circumstances, the circuit court properly denied the appellant's request to change the filing date to December 27, 1999." *Page 352 
___ So.2d at ___ _ ___ (footnotes omitted).
At the time Hyde submitted his Rule 32 petition, Rule 32.6(a) provided:
 "(a) Form, Filing, and Service of Petition. A proceeding under this rule is commenced by filing a petition, verified by the petitioner or petitioner's attorney, with the clerk of the court. A petition may be filed at any time after entry of judgment and sentence (subject to the provisions of Rule 32.2(c)). The petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form. The petition
shall be accompanied by two copies thereof. It shall also be accompanied by the filing fee prescribed by law or rule in civil cases in circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis, in which event the fee shall be waived. If the petitioner desires to prosecute the petition in forma pauperis, he shall file the In Forma Pauperis Declaration at the end of the form. In all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined as to the amount of money or securities on deposit to the petitioner's credit in any account in the institution, which certificate may be considered by the court in acting upon his application for leave to proceed in forma pauperis. Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition and promptly send a copy to the district attorney (or, in the case of a petition filed in the municipal court, to the municipal prosecutor)."
(Emphasis added.)
In concluding in Clemons that a petition is "filed" the date the circuit court grants the petitioner's request to proceed in forma pauperis, instead of the date the petitioner submits the request, this Court relied on the last sentence in Rule 32.6(a) and on De-Gas, Inc. v. Midland Resources,470 So.2d 1218 (Ala. 1985). Although when read in isolation the last sentence in Rule 32.6(a) — providing that the circuit clerk shall "file" the petition only after the filing fee is paid or the circuit court grants the request to proceed in forma pauperis — suggests that a Rule 32 petition is not deemed filed until the request to proceed in forma pauperis is granted, we cannot read this sentence in isolation; we must read it in the context of Rule 32.6(a), including the first sentence of Rule 32.6(a), which specifically provides that a Rule 32 proceeding is commenced when a petitioner files a petition with the circuit clerk. Thus, the filing of the petition by the circuit court clerk contemplated in the last sentence of Rule 32.6(a) is not the filing of the petition that commences a Rule 32 proceeding for purposes of the limitations period.[5] *Page 353 
The holding in De-Gas indicates nothing different; the Court stated that "the payment of the fees required by § 12-19-70 or the filing of a court-approved verified statement of substantial hardship is a jurisdictional prerequisite to the commencement of an action for statute of limitations purposes." 470 So.2d at 1222. The Court held that by failing to pay the filing fee mandated by § 12-19-70 at the time they filed the complaint, the plaintiffs "did not have a bona fide intent, at the time of filing, to proceed with this action." 470 So.2d at 1222. In doing so, the Court relied on several of its previous cases — Ward v.Saben Appliance Co., 391 So.2d 1030 (Ala. 1980); Freerv. Potter, 413 So.2d 1079 (Ala. 1982); and Finkelsteinv. Lovell, 449 So.2d 1240 (Ala. 1984) — all of which held that an action was not commenced by the filing of a complaint when the plaintiffs attorney specifically directed the circuit clerk to withhold service of the complaint on the opposing party because by instructing the clerk to withhold service, the plaintiff indicated an intent not to proceed with the action. The same cannot be said, however, when a request to proceed in forma pauperis is submitted with a Rule 32 petition in accordance with the requirements in Rule 32.6(a); by submitting a request to proceed in forma pauperis with the petition, a petitioner shows a bona fide intent to proceed with the Rule 32 proceeding.
Therefore, although our analysis in Clemons was correct, our conclusion was not. A Rule 32 petition is deemed filed for purposes of the limitations period the date the petition, accompanied by a request to proceed in forma pauperis, is submitted to the circuit court, not the date the circuit court grants the request to proceed in forma pauperis.[6] To hold otherwise would allow inadvertence on the part of a circuit court in failing to rule on a request to proceed in forma pauperis, as occurred in this case, to operate as a time-bar to a petition that was properly submitted in accordance with the requirements in Rule 32.6(a) within the limitations period and would directly conflict with cases from both the Alabama Supreme Court and this Court indicating that the correct filing date of a Rule 32 petition is the date the petition and the in forma pauperis request are submitted, not the date the in forma pauperis request is granted. See Ex parte Nesbitt,850 So.2d 228, 232 (Ala. 2002) (holding that the circuit court's error in ruling on a Rule 32 petition without first collecting the filing fee or granting the petitioner's request to proceed in forma pauperis "should not prevent [the petitioner's] petition from being addressed by the Court of Criminal Appeals on the ground that it was filed outside the two-year limitations period"); Madden v. State, 885 So.2d 841, 844
(Ala.Crim.App. 2003) (opinion on return to remand) (holding that the circuit court's denial of Rule 32 petition was void because the court had not collected the filing fee or granted the petitioner's request to proceed in forma pauperis, but that the petition "stands as filed in the circuit court" the date it was originally submitted); and Baker v. State,885 So.2d 241, 244 (Ala.Crim.App. 2003) (same). Accordingly, to the extent that Clemons holds that a Rule 32 petition is not deemed "filed" until the date the circuit court grants the request to proceed in forma pauperis, it is hereby overruled.[7] *Page 354 
Because Hyde filed his request to proceed in forma pauperis with his petition on January 11, 2002, his petition was filed within the limitations period.
 II.
Hyde contends that the circuit court erred in summarily denying several of his allegations of ineffective assistance of counsel. We disagree.
 "`In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "`"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
 "`466 U.S. at 687, 104 S.Ct. at 2064.
 "`"The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under `prevailing professional norms,' was `reasonable considering all the circumstances.'" Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994), cert. denied, [514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995)], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "`The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall `outside the wide range of professionally competent assistance.' [Strickland] 466 U.S. at 690, 104 S.Ct. at 2066." Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6
(Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App. 1985). "This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford, *Page 355 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326 (Ala.Cr.App. 1994).
 "`"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
 "`Strickland 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "`"Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Strickland] 466 U.S. at 694, 104 S.Ct. at 2068."
 "`Daniels, 650 So.2d at 552.
 "`"When a defendant challenges a death sentence . . . the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
 "`Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
 "`. . . .'
 "Bui v. State, 717 So.2d 6, 12-13
(Ala.Cr.App. 1997), cert. denied, 717 So.2d 6 (Ala. 1998)."
Dobyne v. State, 805 So.2d 733, 742-44
(Ala.Crim.App. 2000), aff'd, 805 So.2d 763 (Ala. 2001).
Rule 32.3 states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b) states that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." As this Court noted inBoyd v. State, 913 So.2d 1113 (Ala.Crim.App. 2003): *Page 356 
 "`Rule 32.6(b) requires that the petition
itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App. 1999). In other words, it is not the pleading of a conclusion `which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373
(Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle[s] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts."
913 So.2d at 1125. The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State,883 So.2d 724 (Ala.Crim.App. 2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must "identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," Strickland v.Washington, 466 U.S. 668, 690, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.
For the reasons explained below, we conclude that Hyde's allegations of ineffective assistance of counsel were not pleaded with sufficient specificity to satisfy the requirements of Rule 32.3 and 32.6(b).[8]
 A.
Hyde first contends that the circuit court erred in summarily denying his allegation that James Berry, the attorney who represented him during the proceedings on his request for youthful-offender status, was ineffective. In his petition, Hyde alleged:
 "Matt Hyde's inadequate defense began at the very first stage of the proceedings against him — his youthful offender status application. On his application, [Hyde] was represented by attorney James Berry. At the outset of his appearance, Berry stated that he was a `close personal friend' of the victim, Andrew Whitten, as well as the victim's father and brother. He had even represented the victim's brother, who would be a witness for the prosecution, within the past year. Because of these evident conflicts, Berry moved to withdraw as [Hyde's] court-appointed counsel. Although the court later decided that the conflicts would prevent Berry from providing effective counsel at trial, it nevertheless instructed him to represent [Hyde] on his youthful offender application *Page 357 
prior to ruling on the motion to withdraw. Berry failed to object, and proceeded with a deficient representation at this stage.
 "[Hyde] was a child under Alabama law at the time of the offense. See Ala. Code § 12-15-1(3) (1995). Because of this fact and because he was faced with incarceration for one year or more, [Hyde] was entitled to investigation and examination by the trial court to determine whether he should be tried as a youthful offender. See Ala. Code § 15-19-1(a). The application for treatment as a youthful offender is crucial in all proceedings involving defendants twenty-one years of age or younger because it determines whether the defendant will be subject to the `harshness of criminal prosecution and conviction' under a system designed for adults or whether he will be subject to a system designed to rehabilitate and protect young offenders. See Raines v. State, 317 So.2d 559, 561
(Ala. 1975). In Matt Hyde's case, the application for youthful offender status meant the difference between life and a possible sentence of death.
 "Alabama law gives broad discretion to trial courts in their investigation and examination of applicants for youthful offender status. See, e.g., Goolsby v. State, 492 So.2d 635, 636 (Ala.Crim.App. 1986). Accordingly, trial courts may properly consider a broad range of factors and information about the defendant. See id. These include family circumstances, facts regarding education, and remorse of the defendant. See Fields v. State, 644 So.2d 1322, 1323 (Ala.Crim.App. 1994). Materials such as letters attesting to past conduct in school and potential for rehabilitation have been properly submitted by defense counsel in support of youthful offender treatment. See Ex parte Farrell, 591 So.2d 444, 448 (Ala. 1991). Trial courts have also considered investigatory reports, such as those prepared by probation officers. See id.; Arrington v. State, 513 So.2d 40, 42 (Ala.Crim.App. 1987); Prince v. State, 392 So.2d 863, 856 (Ala.Crim.App. 1980). Although Alabama law does not require a formal hearing to be held on every youthful offender status application, Watkins v. State, 357 So.2d 156, 160 (Ala.Crim.App. 1977), trial courts often hold hearings in order to assist them in their statutorily-required investigation and examination of youthful defendants. See, e.g., Fields, 644 So.2d at 1323; Goolsby, 492 So.2d at 636; Prince, 392 So.2d at 856.
 "Contrary to these Alabama statutes and cases governing youthful offender proceedings, [Hyde] received virtually no assistance from his appointed counsel and only a perfunctory dismissal by the court. In preparing for and submitting the youthful offender status application — his one and only submission on behalf of Matt Hyde — Berry conducted a single, short preliminary interview with [Hyde], did not interview any potential witnesses at all, and prepared the entire application in less than 15 minutes. Berry submitted no materials or information whatsoever in support of the application. At the youthful offender proceeding held on March 24, 1995, Berry was so unfamiliar with [Hyde] that the court had to remind him of his own client's name. Furthermore, Berry never moved for a hearing so that [Hyde's] qualifications for youthful offender treatment could be further examined. Even the court admitted, in denying the application, that it `normally, under circumstances of application for youthful offender, sets it down for a hearing to determine that status.' Berry did not object to the court's failure to hold a hearing on the application. Nor did *Page 358 
Berry make arguments relating to [Hyde's] family circumstances, education, substance abuse, or remorse, or present any other relevant evidence. When the court improperly considered the nature of the crime as the sole apparent basis for its denial of [Hyde's] youthful offender status, Berry made no objection. See McCovery v. State, 365 So.2d 358, 360
(Ala.Crim.App. 1978) (court may not deny youthful offender status solely on the basis of the nature of the crime charged). Nor did Berry object to the lack of consideration the court gave to [Hyde's] application.
 "Berry's admitted conflict of interest clearly played a role in his ineffective representation of [Hyde], and the trial court's failure to take adequate steps to determine whether the conflict was too remote to warrant separate counsel constitutes reversible error. See Holloway v. Arkansas, 435 U.S. 475
(1978). Where counsel objects to representation of a defendant on the grounds of conflict of interest, a judge must inquire into the merits of the claim before instructing counsel to proceed with the representation. See Holloway, 435 U.S. at 488-89. The judge in this case did the exact opposite, instructing Berry to proceed with the representation, and then determining, after the fact, that Berry's admitted conflict of interest prevented Berry from representing [Hyde] at trial. The actions of the trial judge thus denied [Hyde] effective assistance of counsel at his youthful offender hearing.
 "[Hyde] was further denied his right to effective assistance of counsel when his trial defense counsel, David Roadruck and Terry Huffstutler, failed to make a motion for a new youthful offender hearing on the grounds of ineffective assistance of counsel. The record clearly shows that [Hyde] was not effectively represented at his youthful offender hearing. Furthermore, the critical nature of this hearing heightened the ineffectiveness of Berry's representation and the obligation of [Hyde's] new counsel to request a new youthful offender hearing. If [Hyde] had been effectively represented at his first youthful offender proceeding, he likely would have obtained youthful offender status and his life would have been spared."[9]
(C. 74-78.)
To the extent that Hyde's allegation in this regard challenges the trial court's refusal to allow Berry to withdraw from representing Hyde during the youthful-offender proceedings and the trial court's denial of youthful-offender status, both of those claims were raised and addressed on direct appeal and thus are barred by Rule 32.2(a)(4). See Hyde,778 So.2d at 224-25. To the extent that this allegation challenges Berry's effectiveness as a result of an alleged conflict of interest, Hyde has not pursued that allegation in his brief on appeal; therefore, it is deemed to be abandoned. See, e.g.,Brownlee v. State, 666 So.2d 91, 93
(Ala.Crim.App. 1995) ("We will not review issues not listed and argued in brief.").
To the extent that this allegation challenges Berry's effectiveness independent of any alleged conflict of interest, Hyde made only bare conclusions unsupported by specific facts. For example, Hyde alleged that Berry failed to interview potential witnesses; however, Hyde failed to identify what witnesses he believes Berry should have interviewed or what information *Page 359 
Berry would have obtained from those witnesses had interviews been conducted. Hyde alleged that Berry failed to submit "materials or information" in support of the application for youthful-offender status (C. 76); however, Hyde failed to identify what materials and information he believes should have been submitted. Hyde also alleged that Berry failed to make any argument regarding Hyde's "family circumstances, education, substance abuse, or remorse, or present any other relevant evidence" (C. 77); however, Hyde failed to allege exactly what information regarding his family circumstances, education, substance abuse, or remorse he believes Berry should have presented and/or argued. Therefore, Hyde failed to plead sufficient facts to satisfy the pleading requirements of Rule 32.3 and 32.6(b).[10] Moreover, because Hyde failed to sufficiently plead his allegation that Berry was ineffective during the youthful-offender proceedings, he necessarily failed to plead sufficient facts indicating that his trial counsel were ineffective for not moving for new youthful-offender proceedings on the ground that Berry was ineffective.
Because this allegation of ineffective assistance of counsel was not sufficiently pleaded in accordance with Rule 32.3 and Rule 32.6(b), summary denial was proper.
 B.
Hyde next contends that the circuit court erred in summarily denying his allegation that his trial counsel, David Roadruck and Terry Huffstutler, were ineffective because of Alabama's statutory scheme for compensating attorneys who represent indigent defendants in capital cases, § 15-12-21(d), Ala. Code 1975.[11] In his petition, Hyde alleged:
 "A criminal defendant's Sixth Amendment right to counsel `requires that assistance to be legally "effective."' Waldrop v. Mississippi 506 So.2d 273, 275 (Miss. 1987); see also Strickland v. Washington, 466 U.S. [668,] 668 [(1984)]. [Hyde's] counsel were unable to provide effective assistance of counsel due, in part, to the grossly inadequate compensation permitted by Alabama statute.
 "At the time of [Hyde's] trial, court-appointed counsel in death penalty cases could not be compensated more than $1,000 for out-of-court work for each phase of the capital trial, based on a $20 *Page 360 
hourly rate. Ala. Code § 15-12-21 (1995). This amount of compensation is grossly inadequate for the time required for two solo practitioners to represent an indigent capital defendant in Marshall County. Consequently, [Hyde's] counsel could not receive any compensation at all for out-of-court work in excess of fifty hours, and were compensated at rates that prohibited counsel from providing any level of adequate representation, even for the initial fifty hours.
 "This prohibitive scheme of compensation precluded counsel from providing an adequate level of representation in [Hyde's] capital case. As a result, [Hyde's] counsel were forced to abdicate their constitutionally mandated responsibilities under the Alabama Constitution and the Sixth and Fourteenth Amendments to the U.S. Constitution. The limitations on compensation imposed by the Alabama statute also violated the state and federal separation of powers doctrine, constituted a taking without just compensation, discriminatorily denied [Hyde] effective assistance of counsel, and violated the Equal Protection Clause and the Alabama Constitution.
 "It is well-recognized at the federal and state level that capital defendants are prejudiced by the statutory limits on compensation for court-appointed attorneys in capital cases. In recent public comments, both Justices O'Connor and Ginsburg expressed their concern with this issue. Justice Ginsburg commented, `I have yet to see a death case, among the dozens coming to the Supreme Court on the eve of execution petitions, in which the defendant was well represented at trial.' O'Connor Expresses Doubts About Death Penalty: U.S. Justice Points to Exoneration of 90 Death-Row Inmates, Dallas Morning News, July 4, 2001, at 4A. `People who are well represented at trial do not get the death penalty.' Chris Adams, Faces of Innocence Condemned to Die: Injustice on Death Row in Alabama, The Champion, Nov. 2001, at 12 (quoting Justice Ginsburg's speech at a law school). Justice O'Connor said, `Perhaps ifs time to look at minimum standards for appointed counsel in death cases and adequate compensation for appointed counsel when they are used.' Justice O'Connor Doubts Fairness of Death Penalty, L.A. Times, July 3, 2001, at 9.
 "State courts have, likewise, recognized that these compensation statutes violate the Fifth, Sixth, Eighth, and Fourteenth Amendments to United States Constitution and Alabama law. See Bailey v. South Carolina, 424 S.E.2d 503, 508 (S.C. 1992) (complexity of capital litigation required court-appointed attorneys to receive reasonable compensation from state and county funds); Makemson v. Martin County, 491 So.2d 1109, 1115 (Fla. 1986) ($3,500 limit on compensation in capital trial violated separation of powers and denied capital defendants effective assistance of counsel), DeLisio v. Alaska Super. Ct., 740 P.2d 437, 443 (Alaska 1987) (attorney compensation at less than `market value' constitutes a taking).
 "The problem with Alabama's own statutory fee cap has been recognized by the state judicial and legislative branches. See McNair v. Haley, 97 F.Supp.2d 1270, 1276 (M.D.Ala.2000) ('Alabama's shameful system for compensating criminal defense counsel for the indigent' is `a problem sorely in need of redress') (supplemental opinion). Recently, the Alabama Legislature directly responded to this crisis by eliminating the cap on attorneys fees, thereby acknowledging the inadequacy of the $1,000 cap in capital *Page 361 
cases. Ala. Code § 15-12-21 (2001). This new compensation statute, however, did not remedy [Hyde's] situation."
(C. 78-80.)
To the extent that this allegation challenges the constitutionality of Alabama's compensation scheme, this claim is barred by Rule 32.2(a)(4) because it was raised and addressed on appeal. See Hyde, 778 So.2d at 234. Moreover, in Bui v. State, 717 So.2d 6, 15
(Ala.Crim.App. 1997), see Bui v. Haley, 321 F.3d 1304
(11th Cir.2003) (which reversed Bui's conviction on other grounds), this Court specifically "reject[ed] the notion that Alabama's statutory scheme for compensating attorneys in capital cases, in and of itself, denies a defendant effective representation." To the extent, however, that Hyde is arguing that the compensation scheme affected his counsel's performance in representing him, this allegation is not procedurally barred, although it is insufficiently pleaded. Hyde did not allege a single act or omission on the part of his trial counsel that he believes was the result of his counsel's compensation or that he believes constituted deficient performance. Therefore, he failed to satisfy his burden of pleading under Rule 32.3 and 32.6(b), and summary denial of this allegation of ineffective assistance of counsel was proper.
 C.
Hyde next contends that the circuit court erred in summarily denying his allegation that his trial counsel were ineffective as a result of the trial court's denial of his request for funds. Hyde alleged in his petition:
 "In addition to the statutory limits on compensation imposed on [Hyde's] trial counsel, the defense was further prejudiced by the trial court's failure to authorize supplementary funds necessary for counsel to investigate, prepare, and defend [Hyde] at the guilt/innocence and penalty phases of his capital murder trial. As a result of the court's failure to provide additional funds to [Hyde's] defense, his counsel were denied the basic tools of an adequate defense. Ake v. Oklahoma, 470 U.S. 68, 77
(1985) (a defendant is entitled to the basic tools of an adequate defense or appeal, and the State must provide them if the defendant cannot afford them); Dubose v. State, 662 So.2d 1189, 1193-94
(Ala. 1995) (due process guarantee of fundamental fairness applies in a case of nonpsychiatric expert assistance when an indigent defendant makes a proper showing that the requested assistance is needed for him to have `a fair opportunity to present his defense'). Specifically, the funds denied for the defense of [Hyde] prevented the adequate investigation of mitigating circumstances, location and preparation of witnesses, and obtaining the written transcripts of the trial of Shannon Mitchell, a codefendant. R. 25-26, 34-35.
 "Funds for any one of these basic tools would have allowed [Hyde's] trial counsel to present a more effective defense. Funds for the trial transcript of co-defendant Mitchell, who was tried separately, in particular, would have greatly aided the two solo practitioners defending [Hyde]. Many of the same witnesses testified at both trials, including a co-defendant of [Hyde's] who agreed to testify for the State. And Mitchell was acquitted of the charges against him. Cf. Illinois v. Russell, 289 N.E.2d 106, 107-08 (Ill.App.Ct. 1972) (trial court committed error in not providing transcript of codefendant's trial to defendant where codefendant's conviction was reversed); see also Grayson v. State, [824 So.2d 804] (Ala.Crim.App. 1999) (citing Illinois v. Russell with approval *Page 362 
as case where party has shown that it has a particularized need for a transcript of a co-defendant's trial). The transcript from Mitchell's trial contained vital information necessary for [Hyde's] lawyers to adequately examine and cross-examine witnesses and present mitigating evidence during the penalty phase of the trial.
 "For example, the testimony of Christina Phelps at Mitchell's trial was highly probative on the issue of [Hyde's] culpability. Her testimony revealed that Larry Whitehead used the fact that [Hyde] had helped him steal money from Hudson Foods to blackmail [Hyde] into helping him murder Andy Whitten. Ms. Phelps also testified that Whitehead had threatened to kill [Hyde] if he did not help him kill Whitten. In fact, Ms. Phelps had written an eight page letter to Detective Tommy Cole detailing the influence that Larry Whitehead had over Matthew Hyde and the threats and coercion Whitehead used to force [Hyde] to help him carry out his scheme. Portions of the letter were read and the letter was introduced into evidence at Mitchell's trial.
 "None of this evidence was introduced at [Hyde's] trial. Christina Phelps did testify at [Hyde's] trial, but [Hyde's] lawyers did not elicit any of the probative testimony she delivered at Mitchell's trial. And [Hyde's] attorneys did not introduce the letter to Tommy Cole into evidence or question Ms. Phelps about it — perhaps because they never even had access to this letter.[12] This testimonial and written evidence would have been extremely beneficial to [Hyde's] defense — the main thrust of which was that Larry Whitehead forced Matthew Hyde to shoot Whitten. But [Hyde's] counsel failed to discover and utilize this evidence, a failure caused in part by the trial court's refusal to provide Hyde's counsel with funds to obtain the transcript of Mitchell's trial.
 "The combined effect of grossly inadequate compensation of [Hyde's] counsel and the court's refusal to supplement these meager sums with funds for the most basic tools necessary to present an adequate defense in a capital case denied [Hyde] his constitutional right to effective assistance of counsel."
(C. 80-83.)
To the extent that this allegation challenges the propriety of the trial court's denial of Hyde's request for funds, the circuit court correctly found that this claim is barred by Rule 32.2(a)(4) because it was raised and addressed on appeal. SeeHyde, 778 So.2d at 216-17. To the extent that this allegation challenges trial counsel's performance as a result of the trial court's denial of funds, it appears to encompass three separate contentions: (1) that the trial court's denial of funds prevented trial counsel from adequately investigating mitigating circumstances for the penalty phase of the trial; (2) that the trial court's denial of funds prevented trial counsel from locating and preparing witnesses; and (3) that the trial court's denial of funds prevented trial counsel from obtaining information that was introduced during the trial of codefendant Shannon Mitchell.
Hyde's challenge to his trial counsel's ability to prepare for the penalty phase of the trial is moot now that Hyde has been resentenced to life imprisonment without the possibility of parole, the least possible sentence he could receive for his capital-murder convictions. See, e.g., Wimberly v.State, 934 So.2d 411 (Ala.Crim.App. 2005), *Page 363 
and Duncan v. State, 925 So.2d 245
(Ala.Crim.App. 2005).
Hyde's contention that the denial of funds prevented his trial counsel from locating and preparing witnesses was clearly not pleaded with sufficient specificity to satisfy the requirements of Rule 32.3 and 32.6(b) because Hyde failed to identify even a single witness he believes trial counsel did not contact as a result of the trial court's denial of funds.
Finally, Hyde's contention that the denial of funds prevented his trial counsel from obtaining information that was elicited during codefendant Mitchell's trial was also not pleaded with sufficient specificity to satisfy the requirements of Rule 32.3 and 32.6(b). Hyde alleged that the transcript of Mitchell's trial contained "vital information" (C. 81), but the only information that Hyde identified in his petition that he believes was "vital" is the testimony of Christina Phelps. Hyde alleged that Phelps testified at Mitchell's trial that Whitehead blackmailed and threatened to kill Hyde if he did not help Whitehead commit the murder. However, Hyde admitted in his petition that Phelps testified at his trial, and he pleaded no facts indicating that his trial counsel could not have obtained the information regarding the blackmail and threats through means other than funds to obtain a transcript of Mitchell's trial[13] and, thus, he failed to plead sufficient facts indicating that the trial court's denial of funds rendered his trial counsel ineffective.
In addition, other than a bare allegation that the trial court's denial of funds denied his trial counsel the tools necessary to prepare and present an adequate defense, Hyde pleaded no facts indicating how he was prejudiced at the guilt phase of the trial. In this regard, we note that, in the portion of his petition entitled "Statement of the Case," Hyde stated:
 "The prosecution's evidence consisted primarily of the testimony of Stephen Brookshire, Sabrina Self, Tammy Chamblee and Christy Clark. Brookshire, who pled to the lesser offense of murder in exchange for testimony against his codefendants, testified that Whitehead threatened to kill him if he did not drive the car to Whitten's house. The State's case also suggested that codefendant Whitehead enlisted the teenaged Hyde to perform the deed for him. Whitehead, who had a lengthy and serious police record and the words `Alabama Ex Con' tattooed on his body, instilled fear into his associates through threats and intimidation.
 "Numerous witnesses, including Whitehead, testified to Whitehead's manipulation of the young Matt Hyde. Whitehead regularly supplied drugs to [Hyde], whose own nickname was `Teddy Bear.' Testimony suggested that on the night of Whitten's murder, Whitehead got [Hyde] high on crystal methamphetamine ('crank'), provided him *Page 364 
with a gun, and commanded him to go up to Whitten's home and shoot him. The State's case suggested that [Hyde] followed Whitehead's orders to a point: He knocked on Whitten's door, and when the officer opened it, the youth shot once through part of the door and into the man's abdomen. The State's case further indicated that he then lost control of the gun and fled back to the car, where Whitehead and Brookshire were waiting. [Hyde] later stated to the police that he was terrified and `begged' Whitehead for forgiveness when he returned. [Hyde] told a police officer that he never intended for Whitten to die. However, Whitehead testified at trial that he, and not [Hyde], killed Whitten. He testified that [Hyde] stayed in the car with Brookshire while Whitehead went to Whitten's home and shot him through the door."
(C. 71-72.) Hyde pleaded no facts in his petition indicating that, given the "numerous witnesses" who testified regarding Whitehead's alleged control over Hyde, the testimony of one additional witness, Phelps, regarding threats and blackmail probably would have changed the outcome of the guilt phase of his trial, i.e., that but for the denial of funds to secure a transcript of Mitchell's trial and the absence of Phelps's testimony regarding blackmail and threats, Hyde probably would not have been convicted of capital murder.
Therefore, because Hyde failed to satisfy the pleading requirements of Rule 32.3 and 32.6(b), summary denial of this allegation of ineffective assistance of counsel was proper.
 D.
Hyde next contends that the circuit court erred in summarily denying his allegation that his trial counsel were not "statutorily qualified to provide effective assistance of counsel in a death penalty case." (C. 83.) In his petition, Hyde alleged:
 "[Hyde's] lead counsel, Terry Huffstutler, suffered from ill health and failed to provide effective assistance of counsel when he did not make a motion to withdraw. Huffstutler's health prevented him from enduring the complicated and lengthy process of [Hyde's] capital case and, thereby, severely prejudiced the outcome in this case. Prior to commencement of trial, Huffstutler had just come out of a substantial round of hospitalizations and surgeries for medical problems including a perforated viscous, sigmoid diverticulitis, abdominal abscess, colostomy, hernia, and gallbladder. At the commencement of trial in 1996, in addition to recuperating from these recent surgeries, Huffstutler was suffering from a viral infection. As a result of this infection, Huffstutler experienced spasms and lost his voice when he spoke for sustained periods of time.
 "In light of his poor health and the gravity of [Hyde's] case, it is inexplicable why Huffstutler would request the appointment of a non-statutorily qualified attorney to assist him, but this is exactly what he did. David Roadruck, the attorney appointed to assist Huffstutler, was not qualified to represent [Hyde] under Alabama law.
 "The Alabama requirements governing the appointment of counsel to death penalty cases are clear: `Each person indicted for an offense punishable under the provisions of this article who is not able to afford legal counsel must be provided with one court appointed counsel having no less than five years' prior experience in the active practice of criminal law.' Ala. Code § 13A-5-54 (1994) (emphasis added). The reasons for this requirement are just as clear: `The obvious reason the Legislature required *Page 365 
appointment of experienced counsel was to ensure that persons subject to the most severe form of punishment are provided with competent and effective representation.' Ex parte Berryhill, [801 So.2d 7] (Ala. 2001), cert denied, [534 U.S. 1022,] 122 S.Ct. 549 (2001).
 "By Roadruck's own admission, he lacked experience in the practice of criminal law, and was especially unprepared to assist in a capital case:
 "`I'm not trying to misrepresent to the Court, but I am not a criminal attorney. I've worked hard on this case. But I'm not a criminal attorney, and I don't — I don't even remember, you know, a whole lot about criminal law.'
 "Roadruck himself clearly believed that he was unqualified to provide effective counsel in this case.
 "The combined deficiencies of trial counsel greatly prejudiced [Hyde's] defense. Because the only attorney who had five years of experience in criminal law was ill and the only healthy attorney was inexperienced, [Hyde] did not receive his statutory or constitutional right to effective assistance of counsel. Had [Hyde] received competent and effective representation throughout all the phases of his trial, he would not be facing the penalty of death today."
(C. 83-84.)
To the extent that Hyde is arguing that he was denied counsel who had at least five years' experience as required by §13A-5-54, Ala. Code 1975, the circuit court correctly found this claim to be barred by Rule 32.2(a)(2) and (4), because it was raised and addressed at trial and on appeal. See Hyde, 728 So.2d at 235. To the extent that Hyde is arguing that his counsel were ineffective as a result of lead counsel's ill health and cocounsel's lack of criminal-law experience, this allegation was not sufficiently pleaded in compliance with Rule 32.3 and 32.6(b). Other than a listing of lead counsel's alleged health problems and the bare allegation that lead counsel should have moved to withdraw as a result of those health problems, Hyde failed to allege any specific facts indicating that lead counsel was unable to function as counsel guaranteed by the Sixth Amendment. Likewise, Hyde made a conclusory allegation that lead counsel's health coupled with cocounsel's lack of experience in criminal law "greatly prejudiced" his defense (C. 84), but he failed to allege any specific facts to support this conclusion, i.e., facts indicating that, but for lead counsel's health and cocounsel's lack of criminal-law experience, the outcome of his trial probably would have been different. Therefore, Hyde failed to satisfy his burden of pleading under Rule 32.3 and 32.6(b), and summary denial of this allegation of ineffective assistance of counsel was proper.
 E.
Hyde next contends that the circuit court erred in summarily denying his allegation that his trial counsel were ineffective for not conducting an adequate pre-trial investigation. In his petition, Hyde alleged:
 "Trial counsel failed to adequately investigate and prepare a defense for the guilt phase of [Hyde's] trial. Defense counsel is under an obligation to thoroughly investigate any criminal case and `to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.' Strickland v. Washington, 466 U.S. at 685
(quoting Adams v. United States ex. rel McCann, 317 U.S. 269, 275 (1942)). `At the heart of effective representation is the independent duty to investigate and prepare. "(C)ounsel have a duty to interview *Page 366 
potential witnesses and `make an independent examination of the facts, circumstances, pleadings, and laws involved.'" Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir.1982) (quoting Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir.1979); see also Holsomback v. White, 133 F.3d 1382, 1387 (11th Cir.1998) (failure to conduct an adequate pre-trial investigation can undermine the confidence in the outcome of a case) (quoting Strickland v. Washington, 466 U.S. at 691); Code v. Montgomery, 799 F.2d 1481, 1483 (11th Cir.1986) (failure to conduct adequate pre-trial investigation and failure to interview all potential alibi witnesses established ineffective assistance of counsel); Nealy v. Cabana, 764 F.2d 1173 (5th Cir.1985) (counsel is required to conduct a `reasonable amount of pretrial investigation').
 "In this case, defense counsel completely failed to conduct an adequate pretrial investigation of the case. Counsel only met with [Hyde] on a few occasions, usually right before a court appearance, and on those occasions only briefly. Thus, [Hyde's] ability to aid in his own defense was severely hampered and his counsel was not fully informed.
 "Defense counsel never contacted [Hyde's] father, and had extremely limited contact with his mother. Even a cursory interview with [Hyde's] father would have disclosed that he possessed helpful information. [Hyde's] father was the first person to visit [Hyde] after his initial arrest and, thus, aside from the police who arrested him, the only person with knowledge of the circumstances surrounding [Hyde's] confession and insight as to [Hyde's] state of mind. [Hyde's] father was also well-known in his community and thus in the unique position to learn about individuals who had information regarding the murder of Whitten and [Hyde's] alleged complicity in the crime. Likewise, had counsel responded to the phone calls of [Hyde's] mother, she could have provided them with information regarding Michael Hill, who witnessed Whitehead confess to the murder the morning afterwards, and regarding other witnesses who had pertinent information material to [Hyde's] defense.
 "Trial counsel also failed to request or obtain [Hyde's] school records. By failing to request [Hyde's] school records, trial counsel was not able to develop an accurate profile of [Hyde's] life. These school records document an early and formative part of [Hyde's] life, and provide an important insight into [Hyde's] personality. These records chronicle [Hyde's] scholastic strengths and weaknesses and his personal development. Furthermore, Hyde's school records draw a trail of the ten times [Hyde] switched schools.
 "Other examples of counsel's deficient pre-trial investigation include their failure to: (i) interview Laura Yaeger, an individual who witnessed Whitehead threaten to have [Hyde] killed if [Hyde] implicated him in the theft investigation and later witnessed Whitehead bragging about shooting Whitten; and (ii) discover the eight page letter Christina Phelps sent to Detective Tommy Cole regarding Whitehead's influence over [Hyde]. It is evident that [Hyde's] counsel's failure to conduct an adequate pretrial investigation prevented them from presenting an effective and adequate defense throughout [Hyde's] trial."
(C. 84-86.)
Hyde alleged that his trial counsel were ineffective because they met with him on only a few occasions and, thus, were not "fully informed" (C, 85); however, he failed to allege exactly what information *Page 367 
he had that he did not have the opportunity to communicate to his counsel as a result of the number of times he met with counsel. Hyde alleged that his counsel were ineffective for not contacting his father because, he claimed, his father had "knowledge of the circumstances" of his confession and "insight" into his "state of mind" (C. 85); however, Hyde failed to allege exactly what Hyde's father knew about his confession, and he failed to allege exactly what "insight" his father had into his state of mind. In other words, Hyde made a bare allegation that his father could have provided information, but failed to allege exactly what that information was.
Hyde alleged that his counsel were ineffective for not contacting his mother, who, he said, had information regarding someone who witnessed Whitehead confess to the murder and "other witnesses who had pertinent information" (C. 86); however, Hyde failed to allege exactly what information his mother had regarding the witness to Whitehead's confession, and he did not identify the "other witnesses" his mother allegedly knew about or specify exactly what "pertinent information" those alleged witnesses had.
Hyde alleged that his trial counsel were ineffective for not obtaining his school records, which, he claimed, could have provided an "important insight" into his personality and development (C. 86); however, he failed to allege what specific information was contained in his school records or what exactly that information would have shown about his personality and development.
In addition, Hyde failed to plead any facts indicating how he was prejudiced by counsel's failure to discover and present any of this information. Indeed, the only claim of prejudice anywhere in this allegation of ineffective assistance of counsel is a single statement at the conclusion of the allegation that "[i]t is evident that [Hyde's] counsel's failure to conduct an adequate pretrial investigation prevented them from presenting an effective and adequate defense throughout [Hyde's] trial." (C. 86.) As noted above, such a bare and conclusory allegation of prejudice without any specific facts indicating how the petitioner was prejudiced is not sufficient to satisfy the pleading requirements in Rule 32.3 and 32.6(b).
Hyde also alleged that his trial counsel were ineffective for not interviewing Laura Yaeger, who, he said, witnessed Whitehead threatening Hyde and bragging about the murder, and for not discovering a letter written by Christina Phelps detailing Whitehead's threats against and coercion of Hyde. As noted in Part II.C. of this opinion, Hyde conceded that "numerous witnesses" testified at his trial to Whitehead's control over him; he also admitted that Whitehead testified at his trial that he, not Hyde, was the one who had committed the murder. However, Hyde's bare and conclusory allegation of prejudice in his petition is unsupported by any specific facts indicating that, in light of the evidence and testimony presented at his trial, the outcome of the guilt phase of his trial probably would have been different, i.e., that but for counsel's failure to discover and present this information to the jury, he probably would not have been convicted of capital murder.[14] *Page 368 
Because Hyde failed to satisfy the pleading requirements of Rule 32.3 and 32.6(b), summary denial of this allegation of ineffective assistance of counsel was proper. See, e.g.,Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir.1993) ("`A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial' United States v. Green,882 F.2d 999, 1003 (5th Cir.1989)."), and Cole v. State,666 So.2d 767, 776 (Miss. 1995) ("A defendant who alleges that trial counsel's failure to investigate constituted ineffectiveness must also state with particularity what the investigation would have revealed and specify how it would have altered the outcome of trial, Nelson v. Hargett,989 F.2d 847 (5th Cir.1993), or `how such additional investigation would have significantly aided his cause at trial.' Merrittv. State, 517 So.2d 517, 518 (Miss. 1987).").
 F.
Finally, Hyde contends that the circuit court erred in summarily denying his allegation that his trial counsel were ineffective for not filing several pretrial motions. In his petition, Hyde alleged:
 "[Hyde's] counsel failed to file certain necessary pre-trial motions. Counsel could have conducted a reasonably effective investigation and challenged the prosecution's case if they had made the following motions, among others, in the trial court:
 "Ex Parte Motion To Provide Funds For Assistance of Forensic Expert
 "Motion to Provide Funds for Psychiatric Evaluation
 "Motion To Allow The Defendant To View The Scene Of The Crime With His Attorneys
 "Motion To Reveal The Identity Of Informants and Reveal Deals, Promises Or Inducements
 "With respect to counsel's failure to request funds for a psychiatric evaluation, criminal defendants have a well-recognized constitutional right to the benefit of psychiatric expert assistance in the presentation of their defense. Ake v. Oklahoma, 470 U.S. 68, 79-80 (1985); Grayson v. Thompson, 257 F.3d 1194, 1231 (11th Cir.2001). If the defendant's mental condition may be relevant to his criminal culpability, a psychiatrist can play a critical role in the defendant's ability to prepare a defense. Ake v. Oklahoma, 470 U.S. at 80. Psychiatrists, `through professional examination, interviews, and elsewhere,' gather' facts `that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question.' Id. Furthermore, defense counsel may be found ineffective for failing to present evidence of a criminal defendant's mental-health problems. Land v. State, 775 So.2d 847, 854 (Ala. 2000); Blanco v. Singletary, 943 F.2d 1477, 1503 (11th Cir.1991) (counsel found ineffective, in part, for failing to introduce evidence that defendant had mental-health problems). *Page 369 
 "Trial counsel's failure to request funds for a psychiatric evaluation denied [Hyde] his right of an effective or meaningful defense and assistance of counsel. A psychiatric evaluation of [Hyde] would have been particularly important in this case, where there was substantial evidence of [Hyde's] history of drug abuse and unstable upbringing. Furthermore, a trained psychiatrist could have gathered and analyzed important information regarding the extent to which Whitehead manipulated the conduct of [Hyde]. For example, a psychiatrist could have explained how Whitehead, an older and intimidating man could completely dominate the actions of [Hyde], a drug-addicted teenager. This expert testimony, if not useful for proving [Hyde's] innocence, would have played an important role as mitigating evidence at the penalty phase.
 "Trial counsel was also ineffective in that they failed to make an ex parte motion for funds to hire a forensic expert who could help them independently investigate, evaluate, and challenge the physical evidence. This evidence included the bullet that allegedly caused Whitten's death, a section of the door to Whitten's house that the bullet penetrated, and the clothes allegedly worn by [Hyde] on the night of the incident. Had [Hyde's] counsel obtained the assistance of a forensic expert, they would have been in a position to challenge the State's evidence and weaken the case against [Hyde]. Instead, each piece of evidence was confronted only on cross-examination of the State's witnesses to the limited extent allowed by trial counsel's own personal knowledge — without the benefit of any forensic expertise.
 "Similarly, trial counsel provided ineffective assistance by failing to make a motion to allow Hyde to accompany them to the scene of the crime. Pertinent information and insights into the occurrences could have been obtained from such a visit. For example, a visit to the physical location would have certainly jogged [Hyde's] memory about the events, allowing counsel to better interview their client. [Hyde] could have guided them through the events in such a way that would have allowed his counsel to fully understand what happened and conduct more useful examinations of the witnesses at trial."
(C. 86-89.)
With respect to counsel's decision not to file a motion for funds for a psychiatric evaluation, Hyde alleged that a psychiatric evaluation would have been "helpful" because of his history of drug abuse and unstable upbringing, and that a psychiatric expert could have "gathered and analyzed important information regarding the extent to which Whitehead manipulated" his conduct (C. 88); however, he failed to allege exactly what information such an expert could have gathered or how that information would have been helpful to his defense at the guilt phase of the trial.[15] In fact, Hyde virtually conceded in his petition that such evidence would not have been useful at the guilt phase, but instead, "would have played an important role as mitigating evidence at the penalty phase." (C. 88.) To the extent that this allegation challenges trial counsel's effectiveness in preparing for the penalty phase of the trial, it is moot now that Hyde has been resentenced to life imprisonment without *Page 370 
the possibility of parole. See Part II.C. of this opinion.
With respect to counsel's decision not to file a motion for funds for a forensics expert, Hyde made only a bare allegation that such an expert could have helped him "challenge the State's evidence" — including the bullet, the door to the victim's home, and the clothes Hyde was wearing at the time of the crime — and "weaken the case" against him. (C. 88.) Hyde, however, failed to even identify what type of forensics expert he believes his counsel should have requested funds to retain, and he failed to allege what information such an expert would have found or how that information would have helped him challenge the State's evidence or weaken the case against him.
With respect to counsel's decision not to file a motion to allow Hyde to accompany them to the crime scene, Hyde alleged that "[p]ertinent information and insights into the occurrences could have been obtained from such a visit" and that such a visit would have "jogged" his memory about the crime and helped his counsel to "better interview" him (C. 88); however, he failed to specifically identify what information would have been obtained had he visited the crime scene or how that information would have been helpful to his defense.
Finally, with respect to counsel's decision not to file a motion to reveal the identity of informants, Hyde alleged no facts whatsoever in support of this allegation.
Therefore, Hyde failed to plead sufficient facts to satisfy the requirements of Rule 32.3 and 32.6(b), and summary denial of these allegations of ineffective assistance of counsel was proper. See, e.g., Woods v. State, [Ms. CR-02-1959, August 27, 2004] ___ So.2d ___ (Ala.Crmi.App. 2004), andWilliams v. State, 783 So.2d 108 (Ala.Crim.App. 2000).
 III.
Hyde also contends that the circuit court erred in summarily denying the claim in his petition that the State with-held exculpatory evidence in violation of Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963), by failing to timely disclose a confession made by Whitehead.[16] According to Hyde, the State did not inform him of Whitehead's confession until the day before Whitehead testified, did not give him a copy of the tape recording of the confession until the day Whitehead testified, and never provided him with a transcript of the confession.
As Hyde concedes in his petition and in his brief on appeal, he was aware of the late disclosure of the confession at trial. Therefore, the circuit court correctly found this claim to be procedurally barred by Rule 32.2(a)(3) and (5) because it could have been, but was not, raised and addressed at trial and on appeal. See, e.g., Boyd v. State, 913 So.2d 1113
(Ala.Crim.App. 2003), and the cases cited therein.
We note that Hyde argues in his brief on appeal that this claim is not procedurally barred because, he says, his counsel was ineffective for not raising the claim at trial and on appeal. However, whether Hyde's counsel was ineffective for not raising a Brady claim at trial and on appeal is a separate issue than whether the State, in fact, violatedBrady. Hyde argued in his *Page 371 
petition that the State violated Brady; he did not include in his petition or any of the amendments to his petition any allegation that his counsel were ineffective for not raising a Brady claim at trial or on appeal. "An appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition."Arrington v. State, 716 So.2d 237, 239
(Ala.Crim.App. 1997). Therefore, because Hyde's challenge to his counsel's effectiveness with respect to the Brady
claim is being raised for the first time on appeal, it is not properly before this Court for review.
 IV.
Hyde contends that the circuit court erred in adopting the State's proposed order. Specifically, he argues that there are numerous factual and legal errors in the order that indicate that the order does not represent the court's own independent judgment, but shows a wholesale adoption of the State's proposed order without consideration of his claims. However, this Court has repeatedly upheld the practice of adopting the State's proposed order when denying a Rule 32 petition for postconviction relief. See, e.g., Coral v. State,900 So.2d 1274, 1288 (Ala.Crim.App. 2004), overruled on other grounds, Ex parte Jenkins, [Ms. 1031313, April 8, 2005] ___ So.2d ___ (Ala. 2005), and the cases cited therein. "Alabama courts have consistently held that even when a trial court adopts verbatim a party's proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous."McGahee v. State, 885 So.2d 191, 229-30
(Ala.Crim.App. 2003). Moreover, because we have already determined that Hyde's allegations of ineffective assistance of trial counsel were not sufficiently pleaded and that the circuit court correctly found that Hyde's Brady claim was barred by Rule 32.2(a)(3) and (5), any error in the circuit court adopting the State's proposed order was harmless.
 V.
For the reasons stated above, the circuit court's summary denial of Hyde's Rule 32 petition was proper under Rule 32.7(d). Therefore, the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] Whitehead was also convicted of three counts of capital murder in connection with Whitten's murder and was sentenced to death; his convictions and sentence were affirmed on appeal.Whitehead v. State, 111 So.2d 781 (Ala.Crim.App. 1999), aff'd, 777 So.2d 854 (Ala. 2000).
[2] Rule 32.2(c) was amended effective August 1, 2002, to reduce the limitations period to one year. For those cases that, like this case, became final before August 1, 2001, however, the two-year limitations period applies.
[3] The holding in demons applied only to petitioners represented by counsel — the "mailbox rule" would apply to pro se inmates. See, e.g., Ex parte Allen,825 So.2d 271, 272 (Ala. 2002) ("Alabama courts have held that a pro se incarcerated petitioner/appellant is considered to have `filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing."), and Holland v. State,621 So.2d 373, 375 (Ala.Crim.App. 1993) ("[W]e hold that a pro se incarcerated petitioner `files' a Rule 32 petition when he hands the petition over to prison authorities for mailing.").
[4] Rule 32.6(a) was also amended effective August 1, 2002, to, among other things, add the following language:
 "If the application to proceed in forma pauperis is granted, the filing fee shall be waived. If, upon final disposition of the petition, the court finds that all of the claims for relief are precluded for any of the reasons stated in Rule 32.2, it may assess the filing fee, or any portion thereof, and order the correctional institution having custody of the petitioner to withhold 50% of all moneys the institution then has on deposit for the petitioner, or receives in the future for the petitioner, until the filing fee that has been assessed by the court has been collected and paid in full. The order shall also direct the institution to forward to the clerk of the court in which the petition was filed, at least once every three months until that portion of the filing fee assessed by the court is paid in full, any such moneys collected from the petitioner."
[5] Rather, it appears that the direction in the last sentence of Rule 32.6(a) merely evidences the well-settled rule that a circuit court has no jurisdiction to rule on a postconviction petition until the filing fee has been paid or the request to proceed in forma pauperis has been granted and, thus, that the circuit clerk should not submit the petition for a ruling until jurisdiction is obtained. See, e.g., Ex parteMcWilliams, 812 So.2d 318 (Ala. 2001); Ex parteCarter, 807 So.2d 534 (Ala. 2001); and Ex parteBeavers, 779 So.2d 1223 (Ala. 2000) (all holding that a circuit court has no jurisdiction to rule on a Rule 32 petition without first collecting the filing fee or granting the petitioner's request to proceed in forma pauperis).
[6] In those cases, as in Clemons, in which a petition is initially submitted without a request to proceed in forma pauperis, the correct filing date would be the date the request to proceed in forma pauperis is eventually submitted.
[7] As this Court noted in Clemons, the date of filing in that case was not important because regardless of the date used, the petition was timely filed. Therefore, our decision today, overruling demons in this regard, would not have affected the outcome in that case.
[8] Although specificity was not the reason stated by the circuit court for denying some of Hyde's allegations of ineffective assistance of counsel, as noted above if the circuit court is correct for any reason, we will affirm its judgment. See, e.g., Long v. State, 675 So.2d 532,533 (Ala.Crim.App. 1996) (where the judgment of the circuit court denying a petition for postconviction relief is correct for any reason, this Court will affirm).
[9] As noted, in light of the United States Supreme Court's decision in Roper v. Simmons, 543 U.S. 551,125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), Hyde has been resentenced to life imprisonment without the possibility of parole.
[10] We note that, in his reply brief on appeal, Hyde argues that he alleged in his petition "precisely the relevant facts that counsel could have and should have discovered and presented to the court." (Hyde's reply brief at p. 16.) Hyde then lists specific facts that he believes should have been presented during the youthful-offender proceedings and cites to the portion of his petition where he claims those facts were alleged. The portion of his petition that Hyde cites is that portion entitled "Statement of the Case," in which Hyde included a synopsis of the procedural history of his case as well as the evidence presented at his trial. (C. 69-74.) However, nowhere in his petition did he allege that he believed Berry was ineffective for not presenting during the youthful-offender proceedings the facts listed in the "Statement of the Case" portion of his petition, i.e., the evidence that was ultimately presented at his trial. Had Hyde listed those facts in detail as the facts he believed Berry should have presented during the youthful-offender proceedings, or even referred back to the "Statement of the Case" portion of his petition, perhaps Hyde would have satisfied his burden of pleading with respect to this allegation of ineffective assistance of counsel. However, without any allegation in the petition whatsoever regarding what specific facts and evidence he believes should have been presented during the youthful-offender proceedings, we cannot say that Hyde satisfied his burden of pleading.
[11] Section 15-12-21 was amended in 1999 to remove the cap on the total fee an attorney representing an indigent defendant could recover.
[12] See note 16, infra.
[13] We note that although Hyde made a passing reference in his petition to trial counsel's general failure "to discover and utilize" the content of Phelps's testimony at Mitchell's trial, he made no specific allegation that his trial counsel was ineffective for not discovering this information by means other than a transcript of Mitchell's trial, such as by interviewing Phelps regarding her previous testimony. (C. 82.) Therefore, to the extent that Hyde intended to challenge trial counsel's effectiveness in not discovering, through means other than a transcript, the content of Phelps's testimony at Mitchell's trial, this allegation fails to satisfy the pleading requirements in Rule 32.3 and 32.6(b). Hyde did make a separate allegation in his petition that his trial counsel was ineffective for not discovering and presenting the letter Phelps allegedly wrote. We address that allegation in Part II.E. of this opinion.
[14] We note that, in his brief on appeal, Hyde makes more specific factual allegations than those contained in his petition. However, because those factual allegations were not included in Hyde's petition, they are not properly before this Court and cannot be considered by this Court in determining whether Hyde satisfied the pleading requirements in Rule 32.3 and 32.6(b). See, e.g., Bearden v. State,825 So.2d 868, 872 (Ala.Crim.App. 2001) ("Although Bearden attempts to include more specific facts regarding his claims of ineffective assistance of counsel in his brief to this Court, those allegations are not properly before this Court for review because Bearden did not include them in his original petition before the circuit court.").
[15] We note that, in his brief on appeal, Hyde alleges more specific facts regarding how a psychiatric evaluation would have been helpful to his defense at the guilt phase of the trial; however, because those facts were not included in his petition, they cannot be considered by this Court. See note 14, supra.
[16] Hyde also alleged in his petition that the State failed to disclose a letter written by Christina Phelps. However, he does not pursue that claim in his brief on appeal; therefore, it is deemed to be abandoned. See, e.g., Brownlee v.State, 666 So.2d 91, 93 (Ala.Crim.App. 1995) ("We will not review issues not listed and argued in brief.")