[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13802
_____

D.C. Docket No. 5:05-cv-01547-LSC-JEO

RONALD BERT SMITH,

Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____
(December 28, 2012)

Before TJOFLAT, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Ronald Bert Smith appeals the dismissal of his federal habeas corpus petition brought pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.   The district court dismissed the federal petition because it was not filed within AEDPA's one-year statute of limitations.   The only issues here involve tolling.

The district court rejected Smith's argument that his application for state post-conviction relief statutorily tolled AEDPA's one-year filing deadline, concluding that Smith had not "properly filed" his state petition within the one-year federal deadline.   The district court also rejected Smith's argument that if the filing deadline was not statutorily tolled, it should be tolled on equitable grounds because of his attorneys' conduct, which Smith argues constituted abandonment.[1]   After review and oral argument, we affirm.

## I.    AEDPA's One-Year Limitations Period

On November 8, 1994, Smith murdered convenience store clerk Casey Wilson during an armed robbery.   After a jury trial, Smith was convicted in

---

[1] The district court denied Smith's application for a certificate of appealability.   Later, this Court granted Smith a certificate of appealability on whether Smith's state petition was "properly filed" and whether the district court erroneously denied Smith's claim of equitable tolling or his request for an evidentiary hearing on his equitable tolling claim.

2

Alabama of capital murder.   Although the jury recommended by a vote of seven to five that he be sentenced to life imprisonment without the possibility of parole, the trial court declined to follow the jury's recommendation and sentenced him to death. On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Smith's conviction and sentence.   Smith v. State, 756 So. 2d 892 (Ala. Crim. App. 1998), aff'd, Ex parte Smith, 756 So. 2d 957 (Ala. 2000).   The United States Supreme Court denied Smith's petition for a writ of certiorari on October 2, 2000.   Smith v. Alabama, 531 U.S. 830 (2000).

AEDPA provides that a state prisoner has one year from the date his state court judgment becomes final on direct review to file an application for a writ of habeas corpus in federal court.   28 U.S.C. § 2244(d)(1).   There is no dispute here that Smith's federal petition, which he filed on July 19, 2005, was filed well more than one year after October 2, 2000, "the date on which [his state court] judgment became final by the conclusion of direct review[.]"   Id.

AEDPA provides that the one-year deadline is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"   Id. § 2244(d)(2) (emphasis added).   Smith, therefore, had one year from October 2,

3

2000 in which to properly file his state petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure, ("Rule 32 Petition"), so as to toll the federal deadline.[2]

## II.    Factual Background

After his direct review was concluded, Smith sought new counsel to represent him in his state and federal post-conviction proceedings.   In late 2000, volunteer lawyers and law students working with the Equal Justice Initiative ("EJI") prepared a draft Rule 32 petition for Smith.   However, the EJI attorneys' busy caseload did not permit them to represent Smith in court.   Thus, in early 2001, EJI tried to recruit an attorney to take Smith's case pro bono.

On March 8, 2001, an EJI attorney wrote Smith a letter informing him that EJI was looking for someone to represent him and that they had several months in which to find someone.   The EJI attorney letter to Smith stated:

> [T]he students this fall helped prepare a petition for you to file pro se if a lawyer is not found.   That will ensure that you don't miss any deadlines. . . . We will continue to look for someone for you in the next couple of months. . . . In the meantime, as we look for counsel, know that a petition is being drafted for you so that you will not miss your deadline.

---

[2]  Under Alabama's rules of criminal procedure in effect at the time of Smith's state court proceedings, the state statute of limitation for a Rule 32 Petition was two years from the date when the state appellate court issued its Certificate of Judgment of his conviction and death sentence. Thus, the deadline by which Smith had to file his Rule 32 Petition to comply with the state's filing limitation rules was later than the date by which Smith had to file that same petition in order to toll the AEDPA filing deadline.

4

In July 2001, Tennessee attorney William Massey agreed to represent Smith in his Rule 32 proceedings.   On July 26, 2001, EJI Executive Director Bryan Stevenson, a lawyer, sent Massey a letter thanking him for agreeing to represent Smith.   Stevenson told Massey that EJI staff was "putting together the case materials for [Smith's] case," and the letter enclosed "a copy of [EJI's] postconviction manual."   Stevenson's letter stated that he expected to "speak with you [Massey] by phone before Friday, July 27, about case name and details and [will] send a record to you."

Also on July 26, 2001, EJI's Stevenson wrote Smith a letter, informing him that Massey had "agreed to take your case" and that Smith would "hear from him [Massey] very soon."   Stevenson's letter to Smith further stated: "To make sure that you can appeal your case in federal court, a preliminary Rule 32 petition may first be filed, followed later by an amended petition after Mr. Massey learns more about your case."

Because Massey was not admitted to practice in Alabama, he needed local counsel in Smith's Rule 32 proceedings.   C. Wade Johnson, an Alabama attorney, agreed to act as local counsel.   The circumstances of Johnson's agreeing to represent Smith are unclear, but Smith states that Massey "recruited" Johnson.

On September 27, 2001, within AEDPA's one-year period for statutory tolling, Smith's attorneys filed the Rule 32 Petition with the state court.   However,

5

Smith's attorneys Massey and Johnson failed to include either the filing fee or a motion to proceed in forma pauperis.   It is unclear whether Johnson or Massey filed the Rule 32 petition, but it is undisputed that Smith's attorneys sent no filing fee or in forma pauperis petition.

The record suggests that Massey's firm (through either Massey or another attorney) filed the Rule 32 Petition and then sent a copy to Johnson.   We say this because the record contains a copy of a letter, dated September 26, 2001, from C. Michael Robbins, an attorney at Massey's firm, to Johnson that states, "Enclosed please find a copy of the Petition filed September 28, 2001.   Please call if you have any questions or concerns."   The enclosure the letter contained is not in the record. The Rule 32 Petition has Massey's name and law firm address as well as Johnson's name and law firm address.   The only signature on the petition is Johnson's.

On October 15, 2001—thirteen days after AEDPA's limitations period had run—Johnson's law firm in Alabama informed Massey by letter that the Rule 32 Petition had been returned by the Clerk's office with a note advising that "a filing fee of $154.00, or informa [sic] pauperis, is required to file the Petition" and asked Massey to "please submit the filing fee and the application for pro hac vice to our office at your earliest convenience, so that we may get this Petition filed."   Smith's

6

filing fee was finally paid on February 6, 2002, at which time the state court considered Smith's Rule 32 Petition properly filed under Alabama's filing rules.[3]

Smith states in his brief that Massey paid the filing fee, and this assertion has some record support, too.   The filing fee was paid two days after an attorney for the State informed Johnson (by letter) and Massey (by facsimile) that Smith's state limitations period was about to run.   And by February 2002, Johnson was on disability inactive status with the state bar and was not representing his clients any longer.   That leaves Massey.

At some point on or before February 20, 2002, Massey found new local counsel for Smith's case.   On March 25, 2002, Alabama attorney Brian M. White entered an appearance for Smith.   Attorney White later associated another Alabama attorney, Charles Pullen.   On October 2, 2002, Massey's firm notified White and Pullen that, given the two Alabama attorneys' representation of Smith, Massey and his firm would withdraw.

White and Pullen represented Smith through the conclusion of the Rule 32 proceedings.   After an evidentiary hearing, the state court eventually denied relief

---

[3] The state court's "Case Action Summary" lists as the first action in the notes section the handwritten notation of "Petition for relief—check received" with a date of February 6, 2002. Additionally, the file-stamped copy of Smith's Rule 32 Petition shows the original September 27, 2001 date crossed out, with a hand-written date and notation below it stating, "February 6, 2002 check received."   The state court's docket does not identify who paid the fee, just that it was paid by check.

on all of Smith's many claims in May 2003. The Alabama Court of Criminal Appeals affirmed and the Alabama Supreme Court denied Smith's petition for a writ of certiorari on July 15, 2005.

### III.    Statutory Tolling

Although the February 6, 2002 filing was timely under Alabama's two year statute of limitations, it was not within the one year statute of limitations required by AEDPA. Relying on statutory tolling, Smith argues that we should consider the Rule 32 Petition as having been "properly filed" on September 27, 2001, when it was originally submitted to the Clerk, albeit without the filing fee or a motion to proceed in forma pauperis. However, Alabama law precludes such a construction of AEDPA's requirement for a "properly filed" state petition. See Artuz v. Bennett, 531 U.S. 4, 8 (2000) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."). Alabama law requires that a Rule 32 petition "be accompanied by the filing fee prescribed by law or rule in civil cases in the circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis." Ala. R. Crim. P. 32.6(a). Alabama courts have unequivocally required that one of these formalities, either the payment of the filing fee or the filing of an in forma pauperis motion, be completed in order for a Rule 32 petition to be considered properly filed. See, e.g., Ex Parte Carter, 807 So. 2d 534, 536–37 (Ala. 2001) (holding that where

8

neither a filing fee nor a motion to proceed in forma pauperis were filed with a Rule 32 petition, the Alabama circuit court lacked jurisdiction to consider the petition precisely because the petitioner had omitted them); Hyde v. Alabama, 950 So. 2d 344, 353 (Ala. Crim. App. 2006) ("A Rule 32 petition is deemed filed for purposes of the limitations period the date the petition, accompanied by a request to proceed in forma pauperis, is submitted to the circuit court, not the date the circuit court grants the request to proceed in forma pauperis."); Clemons v. State, 55 So. 3d 314, 333-37 (Ala. Crim. App. 2003) ("[I]n this case, the petition that counsel attempted to file on December 27, 1999, was not accompanied by a filing fee or a request to proceed in forma pauperis.   Therefore, the petition was not properly filed at that time, as contemplated by Rule 32.6(a), Ala. R. Crim. Pro."), rev'd on other grounds, Ex parte Clemons, 55 So. 3d 348 (Ala. 2007), overruled in part by Hyde, 950 So. 2d at 353.[4]  Accordingly, we find no reversible error in the district court's determination that Smith's federal habeas petition was time barred because it was

---

[4] Smith's reliance on Hyde as support for his position is unpersuasive.   In Hyde, the state court was willing to treat the date of the original submission of the Rule 32 petition as the properly filed date because the petitioner had fully complied with the state court filing fee rules by filing a motion to proceed in forma pauperis and it was the court that caused the delay by not ruling on the motion to proceed in forma pauperis for some time.   950 So. 2d at 353.   Hyde's rationale is simply inapplicable here, where neither the filing fee nor motion for in forma pauperis was filed. Nor do we find Garrett v. State, 644 So. 2d 977 (Ala. Crim. App. 1994), overruled by Ex parte Jenkins, 972 So. 2d 159 (Ala. 2005), applicable to support Smith's argument that his filing date should relate back to the date that his petition was originally sent to the Clerk.   Garrett addressed the requisite form for a Rule 32 petition.   It is not applicable to the circumstances here, especially in light of the Alabama law explicitly addressing the failure involved in this case.

not filed within AEDPA's one-year statute of limitations, which was not statutorily tolled because Smith's Rule 32 Petition had not been "properly filed" during AEDPA's one-year limitation period.   See 28 U.S.C. § 2244(d)(2).

## IV.   Equitable Tolling

Turning to Smith's final argument, we likewise find no error in the district court's determination that the circumstances surrounding his attorneys' failure to pay the state court filing fee or file an in forma pauperis motion entitle him to equitable tolling of the federal filing deadline.   A petitioner is entitled to equitable tolling of AEDPA's one-year filing deadline "if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."   Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted); Lawrence v. Florida, 549 U.S. 327, 336 (2007).

With regard to diligence, the defendant is required to exercise "reasonable diligence" rather than "maximum feasible diligence."   Holland, 130 S. Ct. at 2565 (internal citations and quotation marks omitted).   Our Court likewise has noted that "due diligence . . . does not require a prisoner . . . to exhaust every imaginable option, but rather to make reasonable efforts."   Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002).   "[T]he due diligence inquiry is an individualized one that must

10

take into account the conditions of confinement and the reality of the prison system." Id. (internal quotation marks omitted).

In this case, we need not decide whether the facts establish that Smith was sufficiently diligent in pursuing his rights because, in any event, Smith has not demonstrated that an "extraordinary circumstance" prevented him from filing his Rule 32 petition before the AEDPA limitations period expired. As to exceptional circumstances, the general rule is that "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause." Maples v. Thomas, 132 S. Ct. 912, 922 (2012). However, there are circumstances where "an attorney's unprofessional conduct can . . . count as an 'extraordinary circumstance' justifying equitable tolling." Id. at 923; see id. at 927 (holding that the particular attorney misconduct in that case rose to the level of abandonment of a client and constituted an extraordinary circumstance); see also Holland, 130 S. Ct. at 2563 (rejecting a per se rule that "grossly negligent" attorney conduct can never amount to a showing of extraordinary circumstances to warrant equitable tolling).

Smith argues that in Holland, the Court did not limit its consideration of Holland's claim to the simple failure to timely file the federal petition, but addressed

11

all of the surrounding circumstances[5] when concluding that Holland's lawyer's misconduct may have constituted "far more than 'garden variety' or 'excusable neglect.'"  Id. at 2564.   Smith argues that the conduct of Massey and Johnson likewise constituted abandonment or, at the minimum, such a gross breach of professional conduct that he has satisfied the extraordinary circumstances element for equitable tolling under Maples and Holland.   Specifically, Smith argues that Johnson, his Alabama counsel, was unable to competently represent him at the time he was supposed to properly file his Rule 32 Petition and in post-conviction proceedings generally, as a result of Johnson's long and ongoing history of abuse of prescription drugs and crystal methamphetamine.   Smith points out that while Johnson was supposed to be representing Smith, he was on probation for a public intoxication conviction and often required assistance from other attorneys in handling his cases due to his drug addiction.   The affidavit of Johnson's former legal assistant asserted that Johnson was often intoxicated when he came into the office and that, upon occasion, his staff had to retrieve Johnson from his home in

---

[5]  These circumstances included failing to file Holland's federal habeas petition on time "despite Holland's many letters that repeatedly emphasized the importance of his doing so," failing to research the proper filing deadline "despite Holland's letters that went so far as to identify the applicable legal rules," not informing Holland in a timely manner that the Florida Supreme Court had ruled on his case "despite Holland's many pleas for that information," and an ongoing lack of communication from Holland's lawyer "despite various pleas from Holland that [the attorney] respond to his letters."   Holland, 130 S. Ct. at 2564.   The Court concluded that these various violations of "fundamental canons of professional responsibility . . . seriously prejudiced" Holland.   Id. at 2564–65.

12

order to prepare him to attend court.   Less than a month after Smith's Rule 32 Petition was submitted to the Alabama state court improperly on September 27, 2001, Johnson was charged with nine counts of possession of a controlled substance, and shortly thereafter, the Alabama State Bar appointed a supervising attorney to take over Johnson's files, transferring him to disability inactive status.   During the same time period, Smith alleges that Johnson experienced personal financial problems, including a voluntary bankruptcy filing.   Finally, in August 2002, Johnson committed suicide.

Smith points out that the mere failure to pay the filing fee or to submit an in forma pauperis motion with his Rule 32 Petition is akin to the failure to timely file a federal petition in Holland.   Yet, he argues, the circumstances surrounding Johnson's so-called representation of Smith were as, if not more, egregious than the violations of the "fundamental canons of professional responsibility," that the Court in Holland suggested could constitute "extraordinary circumstances."   Holland, 130 S. Ct. at 2564.

However, even if Smith establishes that Johnson's conduct constitutes an extraordinary circumstance that contributed to the failure to toll the federal deadline, he must also show the same for his out-of-state attorney, Massey.   Smith alleges that Massey never obtained pro hac vice status in Alabama, and therefore, if Massey had tried to file the Rule 32 Petition without Johnson, the Rule 32 Petition would

13

have been stricken due to Massey's failure to obtain pro hac vice admission in Alabama. See Black v. Baptist Med. Ctr., 575 So. 2d 1087, 1088 (Ala. 1991) (concluding that a complaint filed by an out-of-state attorney who had no local counsel at the time and who failed to comply with Alabama's mandatory pro hac vice rules "was a nullity"). As a result of his failure to obtain pro hac vice admission in Alabama, Smith argues Massey was unauthorized to act on Smith's behalf in his state court proceedings, thereby constituting abandonment. Smith also points to Massey's withdrawal from his representation in October 2002 as further evidence of Massey's abandonment.

Here, we cannot say that Massey's conduct constitutes abandonment of Smith. Massey undertook to represent Smith in July 2001. Although the record does not contain evidence of what communications took place between Smith and Massey—neither Smith himself nor Massey submitted an affidavit in the district court—we know that EJI informed Smith on July 26, 2001 that Massey had agreed to represent Smith and would be contacting him. And Massey took steps on Smith's behalf, both before and after the AEDPA limitations period ended: Massey put his name on Smith's Rule 32 Petition,[6] he apparently filed the Rule 32 Petition

---

[6] It is unclear to what extent, if any, Massey edited the draft Rule 32 Petition prepared for Smith by EJI. Massey may have edited the petition heavily or he may have barely changed it at all, but at a minimum he added his name to it or authorized that it be added.

14

and certainly sent a copy to Johnson in September 2001, and he paid the filing fee in February 2002. And as to the pro hac vice issue, Massey did not file the Rule 32 Petition without having local counsel and thus his not seeking pro hac vice status did not cause the petition to be stricken. Massey's pro hac vice status is of no moment because local counsel was listed on the petition and local counsel's signature was on it, too. Also, in February 2002, Massey found new local counsel to replace Johnson after learning that Johnson had been placed on disability inactive status. Massey did not withdraw from representing Smith until October 2002, after Alabama attorneys White and Pullen agreed to take Smith's case and a full year after Smith's AEDPA statute of limitations had run.

Furthermore, none of the circumstances that the Supreme Court found constituted attorney abandonment in Maples apply to Massey. Massey did not leave his firm and take a new job that disqualified him from representing Smith, as Maples' out-of-state attorneys both did. See Maples, 132 S. Ct. at 924. Nor did Massey make clear at the outset of his representing Smith that he was not undertaking any substantive or meaningful responsibility for the case, as Maples' local counsel did. See id. at 926. In short, this is not a case, like Maples, where the petitioner's attorneys were "not operating as his agent[s] in any meaningful sense of that word." Id. at 923 (quotation marks and citation omitted). EJI recruited Massey and sent him a draft Rule 32 Petition; Massey voluntarily took on the case,

15

recruited local counsel, and saw that Smith's Rule 32 Petition was submitted to the Alabama state court.   Massey simply did not include the required fee or in forma pauperis motion to make the Rule 32 Petition's filing proper.

Although Massey did neglect to move for pro hac vice status, this fact alone does not constitute abandonment of Smith under the particular facts of this case.[7] Massey was not admitted to practice in Alabama, but he recruited Johnson, who was. Massey was in a co-counseling arrangement in which he understood that Johnson would act as local counsel and was aware that Johnson's name and signature line were on the Rule 32 Petition.   After Massey learned that Johnson was on disability inactive status with the Alabama bar, he obtained new local counsel.   Smith points

---

[7] The facts here are materially different from Maples.   There, Maples' two out-of-state attorneys of record did not file a notice of appeal timely and abandoned him by leaving their firm and stopping work on his case without seeking court permission to withdraw from the case or telling Maples they were leaving.   132 S. Ct. at 919, 924–25.   Although there was some evidence that other lawyers at that same firm had worked on Maples' case, that did not matter because the other attorneys "had not been admitted to practice law in Alabama, had not entered their appearances on Maples' behalf, and had done nothing to inform the Alabama court that they wished to substitute for" the departed attorneys, and thus "none of these attorneys had the legal authority to act on Maples' behalf before his time to appeal expired."   Id. at 925–26.   The other attorneys' failure to inform the court that they were working for Maples and obtain the court's authorization to act for him loomed large because this failure—combined with Maples' abandonment by his attorneys of record—meant that no one representing Maples obtained a copy of the court's order denying his Rule 32 petition in time to file an appeal, causing his claims to be procedurally barred.   Id. at 916–17, 924–26.

Here, by contrast, Massey timely filed a Rule 32 Petition but was negligent in not sending the filing fee or in forma pauperis application.   Massey also (1) put his name on Smith's Rule 32 petition, thus informing the court of his intention to represent Smith, (2) properly retained an Alabama attorney to act as local counsel and to sign and serve the Petition, and (3) replaced the local counsel after learning he could not serve and found new local counsel who entered an appearance in the case.   Moreover, the error here was not abandonment but failure to timely pay a filing fee, which Massey could have paid (and ultimately did pay) on Smith's behalf.

16

out that Massey's failure to obtain pro hac vice status "mean[t] that if the Rule 32 petition had been filed by Mr. Massey's firm, the court could have stricken it on that basis," but the Rule 32 Petition also bore Johnson's name and a signature by (or on behalf of) Johnson.   Moreover, Smith has made no allegations that Massey, on or before October 2, 2002, when Smith's AEDPA limitations period expired, was aware of Johnson's significant personal and professional troubles such that Massey should have known that Johnson effectively was incompetent to represent Smith and that Massey was in effect Smith's only lawyer.   And of course, the Rule 32 Petition was never stricken because of any pro hac vice issue.   It was sent back only for lack of a filing fee or in forma pauperis motion.   Further, when Massey paid the filing fee, the Rule 32 Petition was accepted.

Thus, Smith has not shown that his attorney Massey abandoned him.   Nor has Smith shown that Massey's failure to include the filing fee or in forma pauperis motion with Smith's Rule 32 Petition differs from simply missing a filing deadline which, by itself, is attorney error that constitutes no more than "garden variety" or "excusable neglect."   Holland, 130 S. Ct. at 2564.

Accordingly, we cannot say that Smith has alleged facts that, if proven true, would constitute extraordinary circumstances sufficient for equitable tolling of the

17

federal habeas filing deadline, and therefore conclude that the district court did not err in dismissing Smith's federal habeas petition as untimely.[8]

**AFFIRMED.**

---

[8] For the reasons stated herein, we also find no error in the district court's denial of Smith's request for an evidentiary hearing on his equitable tolling claim.

BARKETT, Circuit Judge, dissenting:

For the reasons articulated in my concurring opinion in Hutchinson v. Florida, 677 F.3d 1097 (11th Cir. 2012) (Barkett, J., concurring in result only), I believe that it is unjust and inequitable to require death row inmates to suffer the consequences of their attorneys' negligence by denying them equitable tolling. Here, although I agree with the majority that Smith is not entitled to statutory tolling of the federal habeas filing deadline, I believe that Smith has alleged sufficient facts regarding both Johnson's and Massey's conduct that, if true, merit the finding of extraordinary circumstances for equitable tolling. At the minimum, Smith should be afforded an evidentiary hearing to determine if his attorneys abandoned him or engaged in egregious attorney misconduct sufficient to warrant equitable relief.

Although the majority declines to decide whether Smith was diligent in pursuing his rights, I believe that Smith's allegations, if proven true, would be sufficient to establish diligence for purposes of equitable tolling. Smith alleges that as soon as his direct appeal concluded he persistently attempted to obtain pro bono counsel through the Equal Justice Initiative for his state and federal post-conviction proceedings and was reassured that they would find him a lawyer and that his deadlines would not be missed. He alleges that once he was advised that Massey had agreed to represent him, he was again reassured that his state and federal petitions would be timely filed. Smith then alleges that he received a date-stamped

19

copy of his Rule 32 Petition with the state court clerk's date-stamp of September 27, 2001. Smith argues that he reasonably assumed that this cover page was confirmation that his Rule 32 Petition had been timely filed on September 27, 2001—the date that was stamped by the court on the caption page. He further alleges that he had no reason to suspect that he was not being represented by competent counsel or that his counsel had failed to pay the required filing fee or submit the in forma pauperis motion with his Rule 32 Petition. He alleges that he did not discover for some time that Massey had never been properly admitted to represent him in Alabama by failing to move for pro hac vice admission; that Johnson was struggling with personally and professionally crippling problems due to his drug addiction;[1] or that Johnson withdrew from his case and had a trustee appointed to protect the interests of his clients as of November 26, 2001, at which time he still did not have a properly filed Rule 32 Petition.[2] Moreover, once the filing fee had been paid in a timely manner under the state rules, the state court proceeded to adjudicate the merits of Smith's Rule 32 Petition. When Smith's state court post-conviction proceedings eventually concluded upon the Alabama Supreme

[1] The district court noted that Smith was unaware that Johnson had a severe drug addiction "which resulted in his suspension by the Alabama Bar within three months of the filing [of the September 27, 2001] Rule 32 petition and [his] eventual suicide."

[2] Smith also alleges that, Patricia Lackey, the court appointed trustee of Johnson's affairs, was unaware that Smith was a death penalty client when she began making inquiries to obtain Smith's contact information.

20

Court's denial of Smith's petition for writ of certiorari on July 15, 2005, Smith immediately, on July 19, 2005, filed his federal habeas petition.   Under these circumstances, in which Smith has alleged that all of the information provided to him indicated that he had competent legal representation and that his state and federal filing deadlines had been met, I would find that reasonable diligence did not require him to make any additional inquiries as to whether his Rule 32 Petition had been properly filed in order to toll his federal habeas limitation period.[3]

Moreover, Smith also demonstrated that extraordinary circumstances prevented the timely filing of his federal habeas petition, which contrary to the majority opinion, I believe Smith has adequately alleged.   Although Johnson's and Massey's failure to pay the appropriate filing fee by itself would not suffice to establish an extraordinary circumstance for equitable tolling, see Maples v. Thomas, 132 S. Ct. 912, 922 (2012), I believe that Smith has adequately alleged that all of the circumstances surrounding both of his attorneys' conduct constituted "far more than [a] 'garden variety' [claim of attorney negligence] or 'excusable neglect,'" Holland v. Florida, 130 S. Ct. 2549, 2564 (2010).   Johnson's substantial professional and personal problems stemming from his long and ongoing history of drug addiction

---

[3] The district court's determination to the contrary that Smith's allegations demonstrate "complete inaction" and "cannot rise to the level of due diligence" because he "never expressed concern over the running of the AEDPA statute of limitations to either his counsel or the state court system" is thus clearly erroneous.

21

and Massey's failure to obtain pro hac vice status in Alabama constituted abandonment or at a minimum, a gross breach of professional conduct sufficient to establish extraordinary circumstances for equitable tolling.

From the beginning of his so-called representation of Smith, Johnson was on probation for a public intoxication conviction and was actively abusing prescription drugs and crystal methamphetamine.   Reportedly, he often came to his office in a state of intoxication and on occasion had to be retrieved from his home by his office staff in order to attend court hearings.   From time to time, he also had to call on other attorneys to assist him in handling his cases.   A few months after taking on Smith's case, Johnson was charged with nine counts of possession for a controlled substance after prison officials, at a state prison where Johnson was visiting a client, noticed Johnson's dog had been left locked in his car and upon opening the car, discovered a bag filled with prescription drugs and crystal methamphetamine. Soon thereafter the Alabama State Bar placed Johnson on disability inactive status and appointed a trustee to take over his cases.   In addition to his severe drug addiction, Johnson had his own personal bankruptcy litigation to contend with during the time he was supposed to be representing Smith.   And about one year after Johnson took on Smith's case, he committed suicide.

These allegations are sufficient to show an egregious breach of Johnson's professional ethical obligations to Smith, which, I believe, constitute the sort of

22

extraordinary circumstances that merit equitable relief under Holland and Maples. Johnson's alleged conduct was comparably egregious to the violations of the "fundamental canons of professional responsibility," that the Court in Holland suggested could constitute "extraordinary circumstances.   130 S. Ct. at 2564; see also Model Rules of Prof'l Conduct R. 1.16(a)(2) (2009) (stating that an attorney must withdraw from representation if the "lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client."); Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010) (concluding that, under Holland, an attorney's misadvice about a deadline due to cocaine use might constitute an extraordinary circumstance).   At the minimum, the district court should have granted Smith an evidentiary hearing to allow him to develop the full factual basis of his claim for equitable tolling.

Moreover, I believe that Massey's failure to obtain pro hac vice status in Alabama, when considered in conjunction with Johnson's inability to competently represent Smith, is sufficient to constitute abandonment under Maples.   Although Massey agreed to represent Smith, he never sought admission under Alabama's mandatory pro hac vice rules and therefore was never authorized to represent Smith in the Alabama state court proceedings.   See Black v. Baptist Med. Ctr., 575 So. 2d 1087, 1088 (Ala. 1991) (holding that a pleading filed by an out-of-state attorney who has failed to comply with Alabama's mandatory pro hac vice rule, is to be stricken as

23

a "nullity").   Indeed, Smith's allegations indicate that, other than agreeing to represent Smith and then a year later "withdrawing" from Smith's case, Massey did very little else.   Smith alleges that neither Massey nor Johnson prepared the Rule 32 Petition that was filed in his case; they merely filed, albeit improperly, the Rule 32 Petition that had been prepared by a group of law student interns for the Equal Justice Initiative.   Not only did Massey fail to seek admission to practice in Alabama and fail to properly file the already-prepared Rule 32 Petition, but even when he was advised by Johnson's office in October 2001 that he needed to complete the pro hac vice process and to pay the required filing fee, he did nothing. Indeed, it was not until several months later and only after the assistant attorney general for the state advised Johnson (who was no longer Smith's attorney due to his disability inactive status) that the state two-year statute of limitations would expire in four days that Massey paid the filing fee.   The only other affirmative step that Massey took on behalf of Smith was to find new local counsel and withdraw from representing Smith.

I do not see any material difference between the circumstances surrounding Massey's inaction and the attorney conduct in Maples, which the Court concluded constituted abandonment.   132 S. Ct. at 927.   In Maples, the Court noted that once the out-of-state attorneys of record left their law firm, no other attorneys from the firm had been admitted to practice law in Alabama, entered their notice of

24

appearance on Maples' behalf, or did anything to indicate that they had the legal authority to act on Maples' behalf.   Id. at 925–26.   Under these circumstances, the Court concluded that no matter what work the attorneys may have done in their law office, none of them had the legal authority to act on Maples' behalf.   Id. at 926. The same can be said for Massey's role in Smith's case.   His failure to obtain pro hac vice status in Alabama, a qualification required to represent Smith in Alabama state court proceedings, rendered him without any legal authority to act on behalf of Smith at the time critical to preserving Smith's legal rights.   And because Johnson was never competent to represent Smith, see Model Rules of Prof'l Conduct R. 1.16(a)(2) (providing that an attorney must withdraw from representing a client if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client"), neither Massey nor Johnson ever meaningfully functioned as Smith's attorneys.

25