**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11734

_____

PHILLIP F.W. BEAZER,

*Plaintiff-Appellant,*

*versus*

RICHMOND COUNTY CONSTRUCTORS, LLC,

*Defendant-Appellee,*

JAMES BISHOP, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:23-cv-00126-JRH-BKE

_____

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

ROSENBAUM, Circuit Judge:

Everyone's heard the famous U.S. Postal Service motto: "Neither snow, nor rain, nor heat, nor gloom of night stays these couriers from the swift completion of their appointed rounds." But that slogan says nothing about hurricanes. Still, after Plaintiff Phillip Beazer's prospective attorney delayed turning down his case for nearly the entire statutory filing period, Beazer had to act quickly. So as Hurricane Idalia bore down, he paid the Postal Service $28.75 for "guaranteed" overnight delivery of his pro se complaint. If the complaint arrived at the district court as "guaranteed," Beazer would beat his filing deadline by a full day. But it didn't. Instead, the complaint arrived after the filing deadline had already passed.

This case requires us to determine whether Beazer is entitled to equitable tolling of the statutory filing period. After careful review and with the benefit of oral argument, we conclude that he is. Beazer pursued his rights diligently, and an extraordinary circumstance prevented him from timely filing. So we vacate the district court's dismissal of this case and remand for further proceedings.

Phillip Beazer brings this lawsuit under Title VII of the Civil Rights Act of 1964, 42 § U.S.C. 2000e *et seq.*, against his former employer Richmond County Constructors. He alleges a disturbing pattern of race-motivated workplace harassment.

After completing the administrative exhaustion process Title VII prescribes, Beazer received a notice of right to sue from the EEOC. The notice advised him that he had 90 days to file a lawsuit

in U.S. district court.  Beazer tried to engage an attorney to represent him and paid consultation fees to a law firm.  The attorney accepted Beazer's documents, but then went silent for weeks, failing to return Beazer's calls.  Finally, shortly before the 90-day deadline expired, the attorney advised Beazer that he could not represent him and that Beazer should file his complaint pro se.  Beazer rushed to draft a complaint.

With two days remaining on the federal clock, Beazer paid a premium for guaranteed overnight delivery from the U.S. Postal Service to mail his complaint to the district court.  The complaint did not arrive within one day, despite the Postal Service's guarantee, and the clerk docketed the complaint five days after the deadline.  The district court considered Beazer's explanation for why the complaint was late but ultimately dismissed the lawsuit as untimely.  After careful consideration and with the benefit of oral argument, we reverse the district court and hold that equitable tolling applies to make the complaint timely.

## I.    BACKGROUND

We briefly summarize the allegations in Beazer's amended complaint.  He asserts that he worked for Richmond County Constructors ("RCC").  Beazer's tenure there was uneventful until February 2022.  But then, he says, he experienced a pattern of race-motivated harassment and discrimination.

After Beazer reported the alleged harassment and discrimination, he asserts, his employer retaliated against him.  RCC gave him impossible and sometimes demeaning work assignments,

4                    Opinion of the Court                    24-11734

engaged in other harassment, and ultimately, terminated his employment in May 2022.

After he was fired, Beazer timely filed a charge of racial discrimination with the Equal Opportunity Employment Commission ("EEOC"). He alleged that RCC subjected him to race discrimination and retaliation. The EEOC notified RCC of Mr. Beazer's charges, and RCC responded to their substance.

On June 2, 2023, Beazer received a right-to-sue notice from the EEOC. The notice advised him that upon receiving the notice, under 28 U.S.C. § 2000e-5(f)(1), he had ninety days—until August 31, 2023—to file his lawsuit.

In post-complaint filings, Beazer explained what happened after that.

Within a week of receiving the right-to-sue letter, Beazer paid a consultation fee to a law firm and tried to retain an attorney.[1] He sent the attorney his file but did not hear back for several weeks. He repeatedly tried to contact the law firm, but he was unsuccessful. Finally, a few days before the ninety days ran, the attorney called Beazer. He told Beazer that he was too busy to handle

---

[1] Beazer had contacted the same attorney for representation when his case was before the EEOC. After accepting a $200 consultation fee, the attorney advised Beazer to return after the EEOC issued a right-to-sue letter. When Beazer did so, the attorney required a second $200 consultation fee.

24-11734                Opinion of the Court                    5

Beazer's case.  When Beazer protested, the attorney told Beazer to file his case pro se.

So Beazer quickly prepared his complaint.  Then, on Tuesday, August 29, 2023—two days before the 90-day deadline—Beazer paid $28.75 to ship the complaint and a motion to proceed *in forma pauperis* "Priority Mail Express," the Postal Service's fastest option.  With its "Money Back Guarantee," the Postal Service assured Beazer his complaint would arrive at the district court the next day, Wednesday, August 30.  So Beazer expected the Postal Service to deliver his complaint to the court with one day to spare on his filing deadline.

That didn't happen.  Instead, the Postal Service delivered Beazer's complaint to the district court on Saturday, September 2, 2023, two days after the ninety-day deadline, and four days after Beazer had mailed it.  The district court clerk docketed Beazer's complaint on Tuesday, September 5, 2023.

Beazer alleges that Hurricane Idalia, which was moving through the Southeastern United States at the time, caused the delay.  And he asks the Court to take judicial notice of a National Hurricane Center report reflecting that Hurricane Idalia caused extreme weather in the southeastern United States while the Postal Service had custody of Beazer's mailing.  *See* NAT'L HURRICANE CTR., TROPICAL CYCLONE REPORT: HURRICANE IDALIA (AL102023) 4, 11 (Feb. 13, 2024), https://www.nhc.noaa.gov/data/tcr/AL102023_Idalia.pdf

[https://perma.cc/55XF-9Q98] ("NHC Report").  We do so.  *See* Fed. R. Evid. 201(c)(2).

That report reflects that the National Weather Service first issued an Idalia-related storm-surge watch for portions of the Georgia coast in the morning on August 28, 2023.  *See* NHC Report at 11, 13.  Idalia then became a hurricane as it entered the far southeastern Gulf of Mexico at about 1:00 a.m. E.T. on August 29, 2023.  *See* NHC Report at 3–4.  Its outer-most bands moved across parts of the Florida Keys and southern Florida in the afternoon and evening that same day.  *Id.* at 4, 7–8.  Hurricane Idalia reached Category 4 hurricane status on August 30, making landfall near Keaton Beach, Florida, at about 4:45 p.m., where it inundated the area with a storm surge of 8–12 feet.  *Id.* at 4, 7.

Within about six hours, Idalia moved inland over southern Georgia.  It "produced a large area of heavy rains and tropical-storm-force winds across southeastern Georgia and eastern portions of the Carolinas" on August 30 and 31.  *Id.* at 4.  Those heavy rains "resulted in flooding across the southeast and south-central portions of [Georgia] that shut down numerous roads."  *Id.* at 9.  But flooding wasn't the only problem.  "The strong winds downed powerlines, uprooted trees, knocked down traffic lights, signs, and billboards across the southern portions of the state."  *Id.*

Amidst this chaos, Beazer's complaint arrived late.  Still, the district court docketed it and granted his request to proceed *in forma pauperis*.  It also issued an order directing him to add detail to

24-11734               Opinion of the Court                 7

his complaint.  Beazer filed an amended complaint twelve days later,  and the magistrate judge permitted his claims to proceed.

RCC moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  It argued that the complaint was untimely.

The district court agreed.  The court explained, "Once the defendant contests whether the plaintiff filed his complaint within ninety days of receipt of the EEOC's right-to-sue notice, 'the plaintiff has the burden of establishing that he met the ninety[-]day filing requirement.'"  But Beazer, the court determined, had not satisfied this burden.

Beazer timely appealed the district court's decision.  He initially proceeded pro se, as he had in the district court.  But in February 2025, we directed counsel to be appointed to represent him.[2]

## II.    STANDARD OF REVIEW

We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss.  *See Veritas v. Cable News Network*, 121 F.4th 1267, 1274 (11th Cir. 2024).

We also review de novo whether undisputed facts satisfy the legal prerequisites for equitable tolling.  *See Booth v. Carnival Corp.*, 522 F.3d 1148, 1149–53 (11th Cir. 2008).

---

[2] The Court appointed Bryan M. Reines of the law firm Zuckerman Spaeder LLP to represent Beazer in this appeal.  We thank him for accepting the appointment and for so capably representing Beazer.

To be sure, RCC is correct that we have sometimes applied an abuse-of-discretion standard when reviewing equitable-tolling decisions. *See, e.g.*, *Arce v. Garcia*, 434 F.3d 1254, 1260 (11th Cir. 2006). *Arce* is not applicable here because it concerned our Court's review of a district court's ruling on a party's motion for judgment as a matter of law or a new trial, and that affected the standard of review we employed. *Id.* at 1259-60.

In particular, in *Arce*, we held, "Considering the evidence in the light most favorable to [the non-moving party], the [district court] concluded that a *trier of fact* could reasonably find that [certain conditions] justified these plaintiffs' delay in filing suit and thus warranted application of equitable tolling." *Id.* (emphasis added). In other words, we reviewed the district court's evidentiary finding, not a ruling that equitable tolling was warranted as a matter of law. *See id.* at 1259 (noting that the district court "turned to the evidence bearing on the question of" whether equitable tolling was warranted.).

Here, though, the district court ruled on defendant's motion to dismiss Mr. Beazer's complaint, treating the facts in Beazer's complaint as undisputed (as we do). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). So the district court's ruling was not a judgment based on a factual finding or the weight of the evidence, but a judgment about what the law permits. In the equitable-tolling context, we review this kind of judgment de novo. *See Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1531 (11th Cir. 1992)

(citing *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975)).[3]

## III.    ANALYSIS

A plaintiff who seeks equitable tolling must satisfy two prerequisites: he must show both that (1) he pursued his rights diligently and (2) an extraordinary circumstance prevented timely filing. *See Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 178 (11th Cir. 2024). On this record, we conclude Beazer has made these showings. As we explain below, Beazer acted with reasonable diligence to prevent an untimely filing, but extraordinary circumstances beyond his control got in the way. So equitable tolling applies and we treat Beazer's lawsuit as timely filed.

### A. Beazer acted with reasonable diligence.

The equitable-tolling doctrine requires complainants to use "reasonable diligence[,]" not "maximum feasible diligence" to comply with deadlines. *Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1271 (11th Cir. 2012). We conclude that Beazer did that.

---

[3] To the extent that any conflict exists in our circuit precedent, we defer to the line of authority containing the oldest opinion. *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003). The oldest opinions in our circuit that considered this issue applied de novo review. *See, e.g., Bailey v. Carnival Cruise Lines, Inc.*, 774 F.2d 1577, 1578 (11th Cir. 1985); *Reeb*, 516 F.2d at 924 (adopted as precedent by *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)).

At the motion-to-dismiss stage, we assume the facts alleged in the complaint to be true. *Twombly*, 550 U.S. at 556.[4]

According to those allegations, Beazer tried to retain an attorney even before he received his right-to-sue letter from the EEOC. And when the attorney took a $200 consultation fee and told Beazer to return after he received the right-to-sue letter, Beazer promptly contacted the same attorney again, within a week of getting the letter. Not only that, but Beazer paid the attorney another $200 consultation fee, and he immediately sent the law firm his files. As time ticked off the limitations-period clock, Beazer attempted repeatedly to reach the attorney, but the attorney didn't respond until "a few days before the [filing] deadline." At that point, the attorney declined to represent Beazer and told him to file a pro se complaint. Beazer immediately did so. And he paid $28.75 to "guarantee" overnight delivery of his complaint to the court by August 30, one day before the filing deadline.

*Suarez v. Little Havana Activities*, 721 F.2d 338 (11th Cir. 1983), compels us to conclude that Beazer's conduct was reasonably diligent. In *Suarez*, Eva Suarez received a right-to-sue notice from the EEOC. *Id.* at 339. That notice gave her a deadline of June 8, 1981, to file her lawsuit. *Id.* On Suarez's behalf, her attorney mailed a

---

[4] For purposes of this analysis, we treat Beazer's responses to RCC's motions to dismiss, which he filed at the direction of the district court, as filings that function as an amendment to his complaint. *See* Fed. R. Civ. P. 15(a)(2). To do otherwise would risk converting RCC's motion to dismiss into a motion for summary judgment, without attendant procedural protections. *See Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).

complaint and summons on June 6, 1981, to the clerk of the District Court for the Southern District of Florida. *Id.* But the clerk didn't file the complaint until two days after the deadline, on June 10. *Id.* Nor did the record establish a reason for the delay. *Id.* In fact, it wasn't clear whether the complaint had arrived after the deadline, or whether the court filed the complaint late because of its own delay. *Id.* ("The record is silent as to where the complaint was between June 6 and June 10."). We determined that "Suarez's actions showed neither a lack of diligence nor carelessness or a lack of intent to actually file the complaint." *Id.* at 340.

*Suarez* controls the result here. Beazer's conduct was at least as diligent—if not considerably more so—than the attorney's conduct in *Suarez*. For starters, Beazer, a person untrained in the law, diligently sought legal advice and reasonably thought he would receive it in a timely way. The law firm he consulted had a long history with the case, dating back to before the EEOC even issued the right-to-sue letter. In fact, the law firm told Beazer to return after he received the right-to-sue letter. And Beazer did that, paying a second consultation fee. So Beazer knew that the law firm was well aware of the ninety-day filing deadline. Plus, the firm accepted two consultation fees and it continued to hold Beazer's files.

Then, when the law firm belatedly notified Beazer that it would not represent him, Beazer quickly prepared his pro se complaint. And he sent it by overnight mail, paying a stiff fee to try to ensure timely delivery. So Beazer reasonably expected the Postal Service to deliver the complaint a day before it was due. The

attorney in *Suarez*, by contrast, filed his complaint using regular mail two days before the deadline with no such guarantees of a one-day delivery. If, as we held in *Suarez*, it was "reasonable for [Suarez] to expect" timely filing of her complaint, it was surely reasonable for Beazer to expect timely filing of his complaint. 721 F.2d at 340. At least he purchased expedited shipping and received assurances that his complaint would arrive the next day.

RCC argues that Beazer wasn't diligent because he could have used a private delivery service instead of the Postal Service. We are not persuaded. RCC offers no reason to believe that a private delivery service would have provided a more credible guarantee of timely delivery than the Postal Service. Nor does RCC explain why using a private courier rather than the Postal Service's guaranteed overnight delivery would somehow make a plaintiff more diligent. And the distinction is lost on us. Equitable tolling does not require a plaintiff to use a private delivery service or to personally deliver his filing to the courthouse. It requires only "reasonable diligence." Beazer's actions here satisfied that threshold.

## B. Circumstances outside Beazer's control caused an untimely filing.

Because Beazer has satisfied the first condition for equitable tolling, we consider whether he has shown the second—an extraordinary circumstance prevented timely filing. We conclude he has.

An extraordinary circumstance, sufficient to support equitable tolling, exists when there is (1) "some extraordinary circumstance" beyond the litigant's "control"; and (2) the circumstance

"caused" the filing delay. *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255–57 (2016) (quotation omitted). Both conditions occurred here.

The equitable-tolling doctrine flows from a "tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.'" *Holland v. Florida*, 560 U.S. 631, 650 (2010) (citation omitted). True to this tradition, we focus not on a single event in the record but instead examine the "totality of the circumstances" in Beazer's case. *Cf. Hunter v. Ferrell*, 587 F.3d 1304, 1309–1310 (11th Cir. 2009) (examining the totality of the circumstances to resolve an equitable-tolling question).

Here, Beazer raises two possible extraordinary circumstances: (1) the law firm's untimely response to Beazer's repeated inquiries over several weeks, despite his payment of two consultation fees; and (2) Hurricane Idalia, which may have affected the Postal Service on the day that Beazer filed his complaint.

We need not determine whether either of these events, independently, could support equitable tolling. *But see Carter v. Hodge*, 726 F.3d 917, 920 (7th Cir. 2013) (noting that a blizzard that causes the clerk's office to close is the "canonical" example of a circumstance that may warrant equitable tolling); *see also Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1236 (11th Cir. 2017) (attorney's abandonment and dilatory conduct may support equitable tolling). That's

14                    Opinion of the Court                    24-11734

so because, in any case, the confluence of these two events qualifies as an extraordinary circumstance.

As we've already detailed, Beazer alleges he delayed in filing his lawsuit because he was waiting to hear back from an attorney at a law firm, who accepted payment for two consultations but did not respond to Beazer's messages. Then, although Beazer paid extra for guaranteed one-day delivery, Hurricane Idalia hit the United States while the Postal Service was in the process of delivering Beazer's complaint to the district court. It's clear from even a quick review of the National Hurricane Center's report on Hurricane Idalia that the storm created unpassable conditions in southeast Georgia, where the district court was located. As important as a timely filing is, it's not worth risking life and limb driving through a hurricane. We conclude that the combination of Beazer's attorney's shortfalls and Hurricane Idalia's treacherous conditions that slowed the Postal Service's delivery of Beazer's complaint created an extraordinary circumstance beyond Beazer's control. And that extraordinary circumstance prevented timely filing here, despite Beazer's diligence.

We also conclude that RCC suffered no prejudice from the five-day delayed filing. *See Suarez*, 721 F.2d at 340 (equitable tolling applied in part because the defendant was not "prejudiced" by the belated filing). After all, RCC had notice of the substance of Beazer's claim through the EEOC process, and it has identified no basis for finding that Beazer's late filing prejudiced it.

In short, Beazer has met the requirements for equitable tolling.  So we vacate the district court's dismissal of the case and remand for further proceedings.

## IV.    CONCLUSION

For the reasons we've explained, we vacated the district court's dismissal of this case.  We hold that Beazer is entitled to equitable tolling and his lawsuit was timely.  So we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**